UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| TEKNIK ALUMINYUM SANAYI A.S., | |
| *Plaintiff,* | |
| v. | |
| UNITED STATES, | Court No. 21-00251 |
| *Defendant,* | |
| and | NON-CONFIDENTIAL VERSION |
| ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, | Business Proprietary Information Removed on Pages 37, 38, 44-48, and 51 |
| *Defendant-Intervenor.* | |

## TEKNIK'S RULE 56.2 MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD

Kristen Smith
Sarah E. Yuskaitis
**Sandler Travis & Rosenberg, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247

*Counsel to Teknik Aluminyum Sanayi A.S.*

Dated: November 22, 2021

## TABLE OF CONTENTS

RULE 56.2 STATEMENT ........................................................................ 1

  I.   Administrative Determination Subject to Appeal .......................... 1

  II.   Issues presented ............................................................................ 2

STATEMENT OF FACTS .......................................................................... 3

SUMMARY OF ARGUMENT ................................................................. 13

STANDARDS OF REVIEW ..................................................................... 15

ARGUMENT ............................................................................................ 19

  I.   Commerce's Decision to Apply AFA Based Upon Alleged
Deficiencies in Teknik's ILVQ Response Is Contrary to Law ............ 19

    A.   The Verification Process Is a Collaborative Process ................ 21

    B.   Commerce's Failure to Allow Teknik to Correct or Supplement
any Perceived Deficiencies in its ILVQ Response is Contrary to Law
      26

    C.   Commerce's Failure to Issue a Verification Report was
Contrary to Law .............................................................................. 28

  II.   Commerce May Only Apply AFA Under Certain Prescribed
Instances ............................................................................................ 29

  III.   Commerce's Determination is Based on Misstatements of Fact. 36

  IV.   Commerce Improperly Used Adverse Inferences in Selecting from
Among the Facts Otherwise Available on Record .............................. 39

    A.   Commerce Improperly Applied AFA for the Exemption for
Property Tax Program and Deduction of Taxable Income Program 41

    B.   Commerce Improperly Applied AFA Foreign Market Research
and Market Entry Grants and Foreign Fair Support Programs ...... 53

  V.   Commerce's Decision to Reject Teknik's Sales Reconciliation is
Contrary to Law and Unsupported by the Administrative Record ..... 58

CONCLUSION ........................................................................................ 61

# TABLE OF AUTHORITIES

## Cases

*Anderson v. U.S. Sec'y of Agric.*, 30 C.I.T. 1742, 462 F. Supp. 2d 1333, 1339 (2006) ..................................................................................19

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984)..16

*Bomont Indus. v. United States*, 733 F. Supp. 1507 (CIT 1990) ............21

*Bowe-Passat v. United States,* 17 C.I.T. 335 (1993) .........................25, 27

*Burlington Truck Lines, Inc.v. United States*, 371 U.S. 156 (1962).......18

*Canadian Wheat Bd. v. United States*, 641 F. 3d 1344 (Fed. Cir. 2011) 18

*Carpenter Tech. Corp. v. United States*, 28 C.I.T. 1329, 344 F. Supp. 2d 750 (2004) .......................................................................................60

*Changzhou Trina Solar Energy Co. v. United States,* 352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) ...............................................................35

*Clearon Corp. v. United States*, 359 F. Supp 3d 1344 (Ct. Int'l Trade 2019)..............................................................................................52

*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003)..18, 60

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)..................................16

*Dalian Meisen Woodworking Co, Ltd. and Cabinets To Go, LLC v. United States*, No. 20-00109 Slip Op. 21-158 (Ct. Int'l Trade Nov. 18, 2021)..............................................................................................21

*Diversified Products Corp. v. United States*, 6 C.I.T. 155, 572 F. Supp. 883 (1983) .......................................................................................16

*F.Lli de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027 (Fed. Cir. 2000)...............................................................35

*Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States*, 25 C.I.T. 1150, 178 F. Supp. 2d 1305 (2001) ....................................................25

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997)......17

*Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261 (Ct. Int'l Trade 2018)..............................................................................................36

*Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1335 (Ct. Int'l Trade 2019)..............................................................................................40

*Koyo Seiko Co. v. United States*, 14 C.I.T. 680, 746 F. Supp. 1108 (1990) ......................................................................................................23

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) ................................................................................ 16, 17

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29 (1983) ............................................................................. 18

*Mueller Commercial de Mex., S. de R.L. de C.V. v. United States*, 753 F.3d 1227 (Fed. Cir. 2014) ................................................... 32

*Neenah Foundry Co. v. United States*, 25 C.I.T. 287, 142 F. Supp. 2d 1008 (Ct. In't Trade 2001) ....................................................... 23

*Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247 (Fed. Cir. 2009) ..................................................................................... 33

*Nippon Steel Corp. v. United States*, 24 C.I.T. 1158, 118 F. Supp. 2d 1366 (2000) ...................................................................... 32

*Nippon Steel Corp. v. United States,* 337 F.3d 1373 (Fed. Cir. 2003) ... 33, 35

*NMB Sing. Ltd. v. United States*, 557 F.3d 1316 (Fed. Cir. 2009) ......... 17

*NSK Ltd. v. United States*, 358 F. Supp. 2d 1276 (Ct. Int'l Trade 2005) ................................................................................................. 34

*NTN Bearing Corp. of America v. United States*, 368 F.3d 1369 (Fed. Cir. 2004) ....................................................................... 34

*Shandong Huarong Gen. Grp. Corp. v. United States*, 27 C.I.T. 1568 (2003) ................................................................................ 24

*Shandong Huarong Mach. Co. v. United States*, 435 F. Supp. 2d 1261 (Ct. Int'l Trade 2006) .................................................... 32

*Shandong Rongxin Imp. & Exp. Co. v. United States*, 163 F. Supp. 3d 1249 (Ct. Int'l Trade 2016) ................................................ 17

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001) ........... 18

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ....................... 16

*Yantai Timken Co. v. United States*, 31 C.I.T. 1741, 521 F. Supp. 2d 1356 (2007) ...................................................................... 24

*Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333 (Fed. Cir. 2011) ................................................................... 33

## Statutes and Regulations

19 C.F.R. § 1677m(d) ..................................................................... 26, 27

19 C.F.R. § 351.307 ............................................................................ 28

19 C.F.R. § 351.307(a) ....................................................................... 28

19 C.F.R. § 351.307(c)...................................................................28
19 C.F.R. § 351.307(d)(1)–(3) ......................................................20
19 U.S.C. § 1516a(b)(1)(A)............................................................17
19 U.S.C. § 1516a(b)(1)(B)(i) ........................................................15
19 U.S.C. § 1677e(a) .............................................................31, 33
19 U.S.C. § 1677e(b) .......................................................31, 32, 35
19 U.S.C. § 1677m(i)(1) .................................................................20

## Administrative Decisions

*Common Alloy Aluminum Sheet from the Republic of Turkey: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, in Part*, 86 Fed. Reg. 13315 (Mar. 8, 2021)........................................................... 1, 11, 19

*Common Alloy Aluminum Sheet From The Republic of Turkey: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Determination of Critical Circumstances in Part, and Alignment of Final Determination With Final Antidumping Duty Determination*, 85 Fed. Reg. 49629 (Dep't of Commerce Aug. 14, 2020)...................................................................................7

*Common Alloy Aluminum Sheet From Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 13,326 (Mar. 8, 2021)..........................................................................4

Memorandum from James Maeder, Deputy Assistant Secretary, to Christian Marsh, Acting Assistant Secretary, *Subject: Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Common Alloy Aluminum Sheet from Turkey, and Final Negative Determination of Critical Circumstances*, 2021 ITA Unpub LEXIS 121 (Mar. 1, 2021) ..........5, 59

## Other Authorities

H.R. Rep. No. 103-316, *reprinted in* 1994 U.S.C.C.A.N. ........................34

# **GLOSSARY**

Adverse Facts Available……………………………….. AFA
Assan Aluminyum Sanayi ve Ticaret A.S……………... Assan
Average Useful Life…………………………………… AUL
Common Alloy Aluminum Sheet……………………… CAAS
Government of Turkey………………………………… GOT
In Lieu of Verification Questionnaire………………….. ILVQ
Period of Investigation………………………………… POI
Teknik Aluminyum Sanayi A.S………………………... Teknik
Turkish Lira…………………………………………... TL

Plaintiff Teknik Aluminyum Sanayi A.S. ("Teknik" or "Plaintiff") by and through its attorneys, hereby submits the following memorandum in accordance with Rule 56.2(c) of the Rules of the Court of International Trade.

## RULE 56.2 STATEMENT

I.   Administrative Determination Subject to Appeal

Pursuant to 28 U.S.C. § 1581(c), this action seeks judicial review of the *Final Determination* of the U.S. Department of Commerce's ("Commerce") investigation of the countervailing duty ("CVD") order on investigation of *Common Alloy Aluminum Sheet ("CAAS") from the Republic of Turkey* ("Turkey") ("Investigation"). *Common Alloy Aluminum Sheet from the Republic of Turkey: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, in Part*, 86 Fed. Reg. 13315 (Mar. 8, 2021) ("*Final Determination*"), P.R. 344, Appx___; *Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation of Common Alloy Aluminum Sheet from the Republic of Turkey* (Dep't of Commerce, Mar. 1, 2021) ("Final I&D Memo"), P.R. 341, Appx___.  The investigation in question covered

1

entries of CAAS from Turkey during the period of investigation ("POI"),
January 1, 2019 through December 31, 2019.

## II.   Issues presented

Teknik brings this action to resolve the following issues:

1. Whether Commerce's determination to apply adverse facts
   available ("AFA") based upon the in lieu of verification
   questionnaire ("ILVQ") response is not supported by substantial
   evidence and not in accordance with law.

2. Whether Commerce's decision to apply adverse inferences in
   selecting from among the facts otherwise available in calculating a
   CVD margin is not based on substantial evidence on the record
   and is otherwise not in accordance with law.

3. Whether Commerce's application of AFA to Deduction of Taxable
   Income for Exports Program is unsupported by the administrative
   record and not in accordance with law.

4. Whether Commerce's application of AFA with respect to the
   Exemption of Property Tax is not supported by record evidence
   and otherwise not in accordance with law.

5. Whether Commerce's determination that Teknik failed to provide the requested screen shots identifying that Teknik did not receive any benefits under the Foreign Market Research and Market Grants Program and the Foreign Fair Support Program is inconsistent with the administrative record.

6. Whether Commerce's application of AFA is inconsistent with its own determinations in the concurrent antidumping ("AD") investigation and, therefore, whether Commerce's determination that Teknik did not cooperate to the best of its ability to comply with Commerce's request for information by not submitting requested information in the manner as requested by Commerce is not supported by substantial evidence and not in accordance with law.

## STATEMENT OF FACTS

Commerce initiated the CVD investigation on April 7, 2020, following the filing of the AD and CVD petitions on March 9, 2020 by the Aluminum Association Common Alloy Aluminum Sheet Working Group ("Petitioner").  *See Common Alloy Aluminum Sheet From Bahrain, Brazil, India, and the Republic of Turkey: Initiation of*

*Countervailing Duty Investigations*, 85 Fed. Reg. 19450 (Apr. 7, 2020),

P.R. 37, Appx___.  On April 20, 2020, Teknik and Assan Aluminyum

Sanayi ve Ticaret A.S. ("Assan") were selected as mandatory

respondents.  *See* Memorandum from Steven Presing, Acting Senior

Director, Office VII, to James Maeder, Deputy Assistant Secretary for

Antidumping and Countervailing Duty Operations, *Subject:*

*Countervailing Duty Investigation of Common Alloy Aluminum Sheet*

*from the Republic of Turkey: Selection of Respondents for Individual*

*Examination* (Apr. 20, 2020), C.R. 12, P.R. 47, Appx___.  Teknik fully

participated as a mandatory respondent in the investigation.  Teknik

also fully participated and was a mandatory respondent in the

concurrent AD investigation concerning common alloy aluminum sheet

from Turkey.  *See Common Alloy Aluminum Sheet From Turkey: Final*

*Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed.

Reg. 13,326 (Mar. 8, 2021) ("*AD Final Determination*"); Memorandum

from James Maeder, Deputy Assistant Secretary, to Christian Marsh,

Acting Assistant Secretary, *Subject: Issues and Decision Memorandum*

*for the Final Affirmative Determination in the Less-Than-Fair-Value*

*Investigation of Common Alloy Aluminum Sheet from Turkey, and Final*

4

*Negative Determination of Critical Circumstances*, 2021 ITA Unpub

LEXIS 121 (Mar. 1, 2021) ("AD Final I&D").

Teknik timely filed the initial CVD questionnaire on June 15,

2020.  *See* Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of

Commerce, *Re: Common Alloy Aluminum Sheet from Turkey: Teknik*

*Aluminyum Sanayi A.S. – Section III of CVD Questionnaire Response*

(June 15, 2020) ("Initial Questionnaire Response"), C.R. 67-78, P.R. 154-

157, Appx___.

The Government of Turkey ("GOT") filed the initial questionnaire

on June 15, 2020, demonstrating that Teknik did not avail Foreign

Market Research and Market Entry Grant programs during the POI.

*See* Letter from the Government of the Republic of Turkey to Dep't of

Commerce, *RE: Response of the Government of Turkey to Initial*

*Questionnaire in Countervailing Duty Investigation on Common Alloy*

*Aluminum Sheet from the Republic of Turkey* (June 15, 2020) ("GOT's

June 15, 2020 QR") at 156-183, C.R. 25, P.R. 104, Appx___ (reporting

benefits received under Foreign Market Research and Market Entry

Grants Program between June 2012 and 2019 for each mandatory

respondent); *id*. at 141-142, C.R. 25, P.R. 104, Appx___ (reporting

benefits received under the Foreign Fair Support Program between June 2012 and 2019 for each mandatory respondent).

Commerce initiated an investigation on July 9, 2020 on the Provision of Land for Less Than Adequate Remuneration (pursuant to the GOT's Law No. 5084) based upon allegations made by Petitioners. Memorandum from Mark Hoadley, Program Manager, AD/CVD Operations, Office VII, to Melissa G. Skinner, Senior Director, Office VII, *Subject: Countervailing Duty Investigation of Common Alloy Aluminum Sheet from the Republic of Turkey: Analysis of New Subsidy Allegation* (Jul. 9, 2020), P.R. 175, Appx___.

As part of the investigation, Teknik also submitted the following supplemental questionnaire responses: New Subsidy Allegation Questionnaire Response on July 17, 2020 and Supplemental CVD Questionnaire Responses on July 20, 2020.  Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Common Alloy Aluminum Sheet from Turkey: Teknik Aluminum Sanayi A.S. – New Subsidy Allegation Questionnaire Response* (Jul. 17, 2020) ("NSA Questionnaire Response"), P.R. 186, Appx___; Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Common Alloy Aluminum*

*Sheet from Turkey: Teknik Aluminum Sanayi A.S. – Supplemental CVD Questionnaire Response* (Jul. 20, 2020) ("First Supplemental Questionnaire Response"), C.R. , 186, P.R. 219, Appx___.

On August 10, 2020, Commerce published its preliminary determination in the CVD Investigation on CAAS from Turkey. *Common Alloy Aluminum Sheet From The Republic of Turkey: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Determination of Critical Circumstances in Part, and Alignment of Final Determination With Final Antidumping Duty Determination*, 85 Fed. Reg. 49629 (Dep't of Commerce Aug. 14, 2020) ("*Preliminary Determination*"), P.R. 235, Appx___; *see also Decision Memorandum for the Preliminary Affirmative Determination in the Countervailing Duty Investigation of Common Alloy Aluminum Sheet from the Republic of Turkey* (Dep't of Commerce Aug. 7, 2020) ("Preliminary I&D Memo"), P.R. 229, Appx___; Memorandum from Gene H. Calvert, International Trade Compliance Analyst, AD/CVD Operations, Office VII, to The File, *RE: Countervailing Duty Investigation of Common Alloy Aluminum Sheet from the Republic of Turkey, Subject: Cross Ownership of the Teknik Reporting Companies*

(Aug. 7, 2020), C.R. 198, P.R. 234, Appx___; Memorandum from Daniel Alexander, International Trade Compliance Analyst, AD/CVD Operations, Office VII, through Mark Hoadley, Program Manager, AD/CVD Operations, Office VII, to The File, *Subject: Preliminary Critical Circumstances Shipment Data Analysis* (Aug. 7, 2020), C.R. 196, P.R. 236, Appx___.; Memorandum from Daniel Alexander, International Trade Compliance Analyst, through Mark Hoadley, Program Manager, to The File, *RE: Preliminary Calculations for Teknik Aluminyum Sanayi A.S. (Teknik)* (Aug. 7, 2020) ("Preliminary Calculations for Teknik"), C.R. 200, P.R. 237, Appx___.

In the *Preliminary Determination*, Commerce calculated, using Teknik's data, a total subsidy rate of 0.07 percent. *See* Preliminary Calculations for Teknik, C.R. 200, P.R. 237, Appx___. Commerce calculated subsidy margins for the (i) Exemption from Property Tax at the rate of 0.05 percent and (ii) Deduction of Taxable Income Program (for exports in 2017) at the rate of 0.02 percent. *Id*. at Att. 1. Accordingly, Commerce found a *de minimis rate* for Teknik. *See Preliminary Determination*, P.R. 235, Appx___.

Following the issuance of Commerce' *Preliminary Determination*,
Teknik submitted the following supplemental questionnaire responses:
CVD Questionnaire Response on September 4, 2020, Supplemental
CVD Questionnaire Response on September 11, 2020, and
Supplemental CVD Questionnaire Response on October 14, 2020.
Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce,
*Re: Common Alloy Aluminum Sheet from Turkey: Teknik Aluminyum
Sanayi A.S. – Supplemental CVD Questionnaire Response* (Sept. 4,
2020) ("Second Supplemental Questionnaire Response"), C.R. 205-206,
P.R. 248, Appx___; Letter from Sandler, Travis & Rosenberg, P.A. to
Dep't of Commerce, *Re: Common Alloy Aluminum Sheet from Turkey:
Teknik Aluminyum Sanayi A.S. – Supplemental CVD Questionnaire
Response* (Sept. 11, 2021) ("Third Supplemental Questionnaire
Response"), P.R. 258, Appx___; Letter from Sandler, Travis &
Rosenberg, P.A. to Dep't of Commerce, *Re: Common Alloy Aluminum
Sheet from Turkey: Teknik Aluminyum Sanayi A.S. – Supplemental
Questionnaire* (Oct. 14, 2020) ("Fourth Supplemental Questionnaire
Response"), C.R. 226-228, P.R. 292, Appx___.

As a result of the COVID-19 pandemic, Commerce issued an in lieu of verification questionnaire. *See* Letter from Mark Hoadly, Program Manager to Teknik Aluminyum Sanayi A.S., *Re: Countervailing Duty Investigation of Common Alloy Aluminum Sheet from Turkey: In Lieu of Verification Questionnaire* (Jan. 14, 2021) ("ILV Questionnaire"), P.R. 314, Appx___.

On January 22, 2021, Teknik submitted its response to the ILV Questionnaire. *See* Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Common Alloy Aluminum Sheet from Turkey: Teknik Aluminyum Sanayi A.S.'s Response to the Questionnaire in Lieu of Verification* (Jan. 22, 2021) ("ILVQ Response"), C.R. 276-293, P.R. 320-322, Appx___. Teknik's ILVQ Response totaled 918 pages and included fourteen (14) excel spreadsheets that were worksheets, balance sheets, account ledgers, *etc.* As part of Teknik's ILVQ Response, Teknik, submitted its entire account ledger for the POI. *Id.* at Exhibit V-14, C.R. 289, P.R. 322, Appx___. Teknik's ILVQ Response also provided screen shots from Teknik's accounting system in the ILVQ Response for the domestic sales reconciliation and export sales reconciliation. *Id.* at Exhibit V-4, C.R. 281, P.R. 321, Appx___; *id.* at

Exhibit V-5, C.R. 282, P.R. 321, Appx__.  Exhibit V-12 provided the account entry that demonstrates receipt from the GOT under "Deduction of Taxable Income" credited in Teknik's account.  *Id.* at Exhibit V-12, C.R. 276, P.R. 321, Appx___.

Teknik submitted a rebuttal case brief on February 9, 2021 demonstrating Teknik's reconciled 2019 sales, lack of payment for exemption for property tax and deduction of taxable income, non-use of other grants, and Teknik's full cooperation and lack of a basis for application of AFA .  *See Teknik Aluminyum Sanayi A.S.'s Rebuttal Case Brief* (Feb. 9, 2021), C.R. 310, P.R. 331, Appx___.

On March 8, 2021, Commerce published its *Final Determination. See Common Alloy Aluminum Sheet from the Republic of Turkey: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, in Part*, 86 Fed. Reg. 13315 (Mar. 8, 2021) ("*Final Determination*"), P.R. 344, Appx___; *see also Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation of Common Alloy Aluminum Sheet from the Republic of Turkey* (Dep't of Commerce, Mar. 1, 2021) ("Final

I&D Memo"), P.R. 341, Appx___.  Teknik was assigned a rate of 4.34 percent.

In the *Final Determination*, Commerce found that Teknik withheld information, failed to provide requested necessary information in the form and manner requested by Commerce, or failed to provide verifiable information for the following programs: Deduction of Taxable Income for Exports; Foreign Market Research and Market Entry Grants Program; Foreign Fair Support Program; Exemption from Property Tax Program.  Final I&D Memo at 6, 15-25, P.R. 341, Appx___.  Commerce, therefore, found that the use of adverse inferences in selecting from among the facts otherwise available on the record was warranted regarding certain programs for Teknik, because Teknik failed to provide the requested information in the form and manner requested by Commerce with respect to its reported sales information and its non-use of certain programs under review.  *Id.* at 21, P.R. 341, Appx___.  Commerce found that Teknik failed to provide screen shots from its accounting ledgers in the ILVQ Response as requested by Commerce to examine the completeness and accuracy of the reported information.  *Id.* at 22, P.R. 341, Appx___.

## SUMMARY OF ARGUMENT

Commerce's Final Determination was unsupported by substantial evidence and contrary to law.  The administrative record demonstrates that Teknik fully cooperating in the underlying investigation, timely filing questionnaire responses and providing thousands of pages of information and documents in response to Commerce's request for information.  Teknik also filed a timely response to the Commerce's ILV Questionnaire that responded to Commerce's questions and provided the requested supporting documentation.

Despite Teknik's full cooperation in the underlying administrative review, Commerce unlawfully applied AFA.  Commerce's AFA determination is unsupported by substantial evidence and otherwise contrary to law.  Teknik's ILVQ Response provided requested documentation demonstrating that Teknik's questionnaire responses tied to the company's business records and financial statements.

Commerce's *Final Determination* demonstrates that Commerce misunderstood information provided by Teknik in its ILVQ Response. Commerce claims that Teknik failed to provide requested documentation including screen shots of Teknik's ledger.  Teknik,

however, out of an abundance of caution, provided the entire period of
investigation account ledger in its ILVQ Response.

Verifications conducted in CVD investigations are interactive.
Commerce's failure to let Teknik know of perceived deficiencies in
materials provided and to correct these deficiencies was an abuse of
discretion and contrary to law.  During in person verification,
Commerce notifies a respondent company where further information
and documentation is required and grants an opportunity to provide.
The same is true with questionnaire responses, where Commerce issues
supplemental questionnaires where further information or clarification
is required.  Commerce's failure to request further information or
clarification with respect to Teknik's ILVQ Response was arbitrary and
capricious and contrary to law.

The administrative record demonstrates that Teknik fully
responded to questions in the ILVQ Response related to the following
programs: Deduction of Taxable Income for Exports, Foreign Market
and Research and Market Entry Grants Program, Foreign Fair Support
Program, Exemption from Property Tax Program, Exemption for
Property Tax Program and Deduction of Taxable Income Program.

Commerce's application of AFA was based upon a misunderstanding of the record and materials provided in Teknik's questionnaire response. Not only did Teknik respond to Commerce's ILV Questionnaire, but Teknik provided more information than requested to ensure that Commerce had sufficient information to see how data reported in questionnaire responses tied to Teknik's books and records. AFA may not apply where companies provide necessary information and fully cooperate with an investigation, as was the case in the underlying investigation.

Commerce's decision to reject Teknik's sales reconciliation and apply AFA in the underlying investigation, while reviewing the same methodology and documentation in the AD segment of the investigation and refusing to apply AFA was arbitrary and capricious. It is nonsensical that Commerce reached two contrary determinations based upon the same facts.

## STANDARDS OF REVIEW

The Court will only sustain Commerce's factual determination if it is based on substantial evidence. 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "more than a mere scintilla. It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  To determine whether there is "substantial evidence" supporting Commerce's position, the Court will examine the record as a whole, including "whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

To support its findings, Commerce must "explain the standards that it applied and demonstrate a rational connection between the facts on the record and the conclusions drawn." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).  Thus, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {its} view.'" *Diversified Products Corp. v. United States*, 6 C.I.T. 155, 161, 572 F. Supp. 883, 888 (1983) (quoting *Universal Camera*, 340 U.S. at 488).  Moreover, "Commerce's determination cannot be based on isolated

tidbits of data which suggest a result contrary to the clear weight of the evidence." *Shandong Rongxin Imp. & Exp. Co. v. United States*, 163 F. Supp. 3d 1249, 1252 (Ct. Int'l Trade 2016) (internal citation omitted). The substantial evidence standard "requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (quoting *Universal Camera*, 340 U.S. at 487).

To support its findings, Commerce must also "explain the standards that it applied and demonstrate a rational connection between the facts on the record and the conclusions drawn." *Matsushita*, 750 F.2d at 933. Such explanations "must be reasonably discernible to a reviewing court." *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009). The Court will hold as unlawful any administrative decision that is arbitrary, capricious or an abuse of discretion. 19 U.S.C. § 1516a(b)(1)(A). An agency determination is arbitrary and capricious, and, therefore, not in accordance with law if "the agency . . . relied on factors which Congress has not intended it to

consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167-68 (1962) (invalidating exercise of agency discretion where agency failed to explain basis of its action); *Canadian Wheat Bd. v. United States*, 641 F. 3d 1344, 1352 (Fed. Cir. 2011) (declining to accord deference to Commerce's interpretation of the statute for failing to provide reasoned explanation for its action).

Commerce acts arbitrarily and capriciously when it "consistently follow{s} a contrary practice in similar circumstances and provide{s} no reasonable explanation for the change in practice." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003). It is well established that "{a}n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (internal quotation marks omitted) (internal citations omitted). A

"principal justification for the administrative state is that in 'area{s} of limitless factual variations, like cases will be treated alike.'" *Anderson v. U.S. Sec'y of Agric.*, 30 C.I.T. 1742, 462 F. Supp. 2d 1333, 1339 (2006) (internal citation omitted) ("Courts will therefore not defer to an agency regulation or adjudicative decision when they produce results which are arbitrary, capricious, or manifestly contrary to the statutory scheme.").

## ARGUMENT

I.   Commerce's Decision to Apply AFA Based Upon Alleged Deficiencies in Teknik's ILVQ Response Is Contrary to Law

Commerce's decision to apply AFA  based upon Teknik's ILVQ Response is contrary to law and not supported by the administrative record of this proceeding.  The administrative record demonstrates that Teknik fully cooperated throughout the underlying investigation, filing timely questionnaire responses consisting of thousands of pages of narrative and exhibits in response to Commerce's requests for information.  Commerce considered this information complete and calculated a preliminary CVD rate based upon information submitted. *See Preliminary Determination*, P.R. 235, Appx___; *see also* Preliminary I&D Memo, P.R. 229, Appx___; Preliminary Calculations for Teknik, C.R. 200, P.R. 237, Appx___.

Despite calculating a preliminary CVD rate for Teknik based upon data provided in questionnaire responses, Commerce based Teknik's final CVD rate on AFA. Commerce incorrectly concluded that Teknik failed to cooperate during verification because the company provided an entire account ledger rather than screen shots of partial portions of the ledger. *See* Final I&D Memo at 8, P.R. 341, Appx___. For reasons expressed in detail below, Commerce's decision to apply AFA was unreasonable as Commerce failed to allow Teknik to provide additional information to correct alleged deficiencies or provide clarifying information, something that would have been routine had Commerce conducted an in-person verification.

Under the statute, Commerce "shall verify all information relied upon in making . . . a final determination in an investigation." 19 U.S.C. § 1677m(i)(1). Commerce's regulations provide for on-site visits to producers and exporters "in order to verify the accuracy and completeness of submitted factual information." 19 C.F.R. § 351.307(d)(1)–(3). "Verification is like an audit, the purpose of which is to test information provided by a party for accuracy and completeness." *See Dalian Meisen Woodworking Co, Ltd. and Cabinets To Go, LLC v.*

*United States*, No. 20-00109 Slip Op. 21-158 (Ct. Int'l Trade Nov. 18, 2021) (citing *Bomont Indus. v. United States*, 733 F. Supp. 1507, 1508 (CIT 1990)).  Verification in CVD investigations is, by its nature, an interactive exercise.  During the verification process, respondent companies provide supporting documentation to Commerce and can supplement said documentation should Commerce feel that the information provided is not sufficient.  This did not happen in the underlying investigation in which Teknik provided more information than requested, out of an abundance of caution, and was penalized for doing so.  Commerce's failure to use this information or ask for clarifying or supplemental information is arbitrary, capricious, and contrary to law.

A. The Verification Process Is a Collaborative Process

      Verifications conducted by Commerce are an audit of data and information reported to Commerce by a respondent company during a CVD investigation to ensure that reported data reconciles with the company's official books and records.  *See Bomont Indus*, 733 F. Supp. at 1508.  Prior to the COVID-19 pandemic, verification was in person. Commerce provided the respondent company a verification outline so

that the company can prepare documentation for the verification. Although Commerce follows the outline, Commerce typically also asks for additional information at verification.

While mandatory respondents certainly prepare materials prior to in person verification, Commerce indicates to respondent companies where further information is required to support information reported in questionnaire responses during verification, and Commerce allows respondent companies to provide any further documentation and support required. While the verification in the underlying investigation was conducted by questionnaire due to the COVID-19 pandemic, it is important that the Court understand the verification process as the process demonstrates the unreasonableness of Commerce's verification of Teknik in the underlying investigation. *See generally* ILV Questionnaire, P.R. 314, Appx___; ILVQ Response, C.R. 276-293, P.R. 320-322, Appx___. Failure to allow respondent companies to provide clarifying information or further information where Commerce deems supporting information is deficient is contrary to Commerce's mandate to ensure fair and accurate CVD determinations. *Neenah Foundry Co. v. United States*, 25 C.I.T. 287, 294, 142 F. Supp. 2d 1008, 1016 (Ct. Int'l

Trade 2001) (*quoting Koyo Seiko Co. v. United States*, 14 C.I.T. 680, 682, 746 F. Supp. 1108, 1110 (1990)) ("fair and accurate determinations are fundamental to the proper administration of our trade laws").

Companies fail verification, resulting in the application of AFA, where the respondent company fails to demonstrate that the reported data matches the company's books and records, or where the company fails to cooperate with Commerce.  Verification is not intended to be a game of "gotcha", to punish a respondent company for failing to provide a specific document when first presenting supporting data to Commerce.  Rather, Commerce lets the company know further information is needed and applies AFA only where a company cannot sufficiently demonstrate that reported information ties to the company's books and records, or in instances where a company fails to cooperate during the verification process.

Examples where the Court has upheld the use of AFA where companies have failed verification are very different from the facts under consideration in the underlying proceeding.  In *Shandong Huarong Gen. Group Corp. v. United States,* for example, a company failed verification when the company failed to prepare any information

23

prior to verification.  The company could not provide information to verify its own submissions and the company reported U.S. sales of bars in its sales data bases that were sales by another company.  *Shandong Huarong Gen. Grp. Corp. v. United States*, 27 C.I.T. 1568 (2003). Similarly, in *Yantai Timken Co. v. United States*, the Court upheld Commerce's use of AFA where Commerce found at verification that the company failed to report certain indirect selling expenses, despite a statement on its questionnaire that included indirect selling expenses as classified in its accounting system.  *Yantai Timken Co. v. United States*, 31 C.I.T. 1741, 521 F. Supp. 2d 1356 (2007).

The administrative record for the underlying investigation demonstrates that the facts under consideration by the Court starkly differ from the cases noted above.  As will be addressed in Sections C and D below, Teknik provided close to a thousand pages to support information reported to Commerce.  Commerce found no inconsistencies in information reported to Commerce in questionnaire responses and in Teknik's books and records.  Moreover, Teknik provided more information to Commerce than requested by providing the entire, actual account ledger, rather than mere screen shots of portions of the same

ledger, demonstrating that the company participated to the best of its ability with the investigation.  Certainly, this demonstrates that Teknik fully cooperated in responding to the ILV Questionnaire.  If Commerce felt a response was deficient or information was missing, Commerce should have requested this information and allowed Teknik the opportunity to submit.  This would have happened during an in-person verification.

Importantly, while the Court has allowed Commerce significant discretion in its verification methodology, Commerce's authority is not unfettered.  As the Court explained in *Fujian Mach. & Equip.*, "Commerce must give respondents a reasonable opportunity to participate in the review and verification process."  *Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States*, 25 C.I.T. 1150, 178 F. Supp. 2d 1305 (2001).  Citing *Bowe-Passat v. United States*, the Court noted that verification and the underlying review "is bilateral and interactive . . . The party must be afforded a reasonable opportunity. . . to satisfy evidentiary concerns." *Id.*; *see also Bowe-Passat v. United States,* 17 C.I.T. 335, 339 (1993).  Here, Commerce's failure to notify Teknik of any alleged deficiency in the company's ILVQ Response not only ignored the

interactive nature of verification but also failed to provide Teknik an

opportunity to satisfy Commerce's perceived evidentiary concerns.

## B. Commerce's Failure to Allow Teknik to Correct or Supplement any Perceived Deficiencies in its ILVQ Response is Contrary to Law

Due to the Covid-19 pandemic, Commerce conducted verification

through questionnaires rather than in person.  *See* Final I&D Memo at

21, P.R. 341, Appx___.  Commerce's refusal to allow Teknik to address

any perceived deficiencies, however, was an abuse of discretion and

contrary to law and Commerce's long-standing verification

methodology.  If Commerce felt that it needed further support or had

questions regarding materials provided during an in-person

verification, Teknik would have been afforded the opportunity to

provide further documentation and respond to these questions.  This did

not occur in the underlying investigation, but it should have.

Granting Teknik the opportunity to address any perceived

deficiencies is also consistent with Commerce's methodology in issuing

questionnaires.  Pursuant to 19 C.F.R. § 1677m(d), where Commerce

"determines that a request for information . . . does not comply with the

request . . . {Commerce} must promptly inform the person submitting

the response of the nature of the deficiency and shall, to the extent

practicable, provide that person with the opportunity to remedy or explain the deficiency in light of the time limit established for the completion of investigations or reviews under this title."  19 C.F.R. § 1677m(d).

The issue before the Court is a novel one as it involves in lieu of verification questionnaires, something that has only been in place since the COVID-19 pandemic.  Counsel knows of no case law that directly address this issue.  However, the case law discussed above is instructive on the verification process and Commerce's failures to allow Teknik the ability to meaningfully participate in the bilateral and interactive nature of verification.  We further note that the Court has required Commerce to allow parties to provide supplemental information pursuant to 19 C.F.R. § 1677m(d) where responses were deemed deficient by Commerce and Commerce did not provide an opportunity to correct the deficiency.  *Bowe-Passat,* 17 C.I.T. at 342 (remanding where deficiency letter failed to state data needed to grant level-of-trade adjustment).

## C. Commerce's Failure to Issue a Verification Report was Contrary to Law

Commerce's failure to issue a verification report was contrary to law and precluded Teknik from commenting on incorrect understanding of factual information or having knowledge of any perceived deficiencies. Section 351.307 of Commerce's regulations sets forth the procedures for verification and resulting verification report. *See* 19 C.F.R. § 351.307. Commerce's regulations provide that, prior to making a final determination, the Secretary may verify relevant factual information. 19 C.F.R. § 351.307(a). As part of the verification process, Commerce is required to issue a verification report that "report{s} the methods, procedures, and results of a verification under this section prior to making a final determination in an investigation." 19 C.F.R. § 351.307(c). As will be detailed below in Section C, Commerce appears to misunderstand information provided in Teknik's ILVQ Response. For example, Commerce indicated that ledger screen shots necessary to verify Teknik's questionnaire responses were not provided. However, as the administrative record demonstrates, the entire actual account ledger was provided to Commerce by Teknik to ensure that Commerce was provided with all necessary information. In other words, Teknik

provided more information than was requested by Commerce to ensure that its response was complete.

Had a verification report been issued, Teknik would have known about Commerce's misunderstanding regarding information provided and pointed to the record documents provided in the ILVQ Response. Lack of a verification report, as required by Commerce's regulations, was contrary to law and an abuse of Commerce's discretion in CVD investigations.

II.   Commerce May Only Apply AFA Under Certain Prescribed Instances

Commerce's application of adverse inferences in selecting among the facts otherwise available on the record is contrary to the administrative record and law. In the *Final Determination*, Commerce determined that the use of an adverse inference in selecting from among the facts otherwise available on the record was warranted regarding certain programs because Teknik "failed to provide requested information in the form and manner requested by Commerce with respect to its reported sales and its non-use of certain programs under review. Specifically, Teknik failed to provide many of the screen shots from its accounting ledgers in its in lieu of on-site verification response

that Commerce requested in order to examine the completeness and accuracy of reported information." *See* Final I&D Memo at 6, P.R. 341, Appx___. Commerce's conclusion that Teknik "withheld information, failed to provide requested necessary information in the form and manner requested by Commerce, or failed to provide verifiable information" for these programs is inconsistent with sections 776(a)(2)(A), (B), and (D). The administrative record demonstrates that Teknik complied with Commerce's investigation to the best of its ability and provided Commerce with more information that was requested to ensure the verifiability of Teknik's reported sales information and Teknik's non-use of certain programs under review. There is no missing information to justify AFA as nothing identified by Commerce creates a material gap in the record concerning usage of these programs.

Commerce's AFA finding must satisfy three criteria: (1) Commerce must identify a gap in the record; (2) Commerce must identify how the interested party failed to cooperate to the best of its ability; and (3) the overall AFA decision must be supported by substantial evidence. These criteria are not satisfied in this case.

The use of facts otherwise available is governed by 19 U.S.C. §

1677e(a):

> (a) In general
> If-
> (1) necessary information is not available on the record, or
> (2) an interested party or any other person-
>   (A) withholds information that has been requested by the administering authority or the Commission under this subtitle,
>   (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,
>   (C) significantly impedes a proceeding under this subtitle, or
>   (D) provides such information but the information cannot be verified as provided in section 1677m(i) of this title,
> the administering authority and the Commission shall, subject to section 1677m(d) of this title, use the facts otherwise available in reaching the applicable determination under this subtitle.

The use of "adverse inferences" (*i.e.*, AFA), is governed by 19

U.S.C. § 1677e(b):

> If the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this title, may use an inference that is adverse to the

interests of that party in selecting from among
the facts otherwise available.

These two provisions require separate findings, *i.e.*, an adverse
inference cannot be applied unless it is appropriate to use facts
otherwise available.  *See e.g.*, *Shandong Huarong Mach. Co. v. United
States*, 435 F. Supp. 2d 1261, 1289 (Ct. Int'l Trade 2006) ("Absent a
valid decision to use facts otherwise available, Commerce may not use
an adverse inference").  The application of AFA is thus a two-part
inquiry.

First, Commerce must identify why it needs to rely on facts
otherwise available.  Second, Commerce must show how a party failed
to cooperate to the best of its ability as to warrant the use of an adverse
inference when "selecting from the facts otherwise available."  *See* 19
U.S.C. § 1677e(b); *see also Nippon Steel Corp. v. United States*, 24 C.I.T.
1158, 1170, 118 F. Supp. 2d 1366, 1378 (2000); *Mueller Commercial de
Mex., S. de R.L. de C.V. v. United States*, 753 F.3d 1227, 1231-32 (Fed.
Cir. 2014).

Commerce's reliance on facts otherwise available is only
appropriate to "fill gaps" in the record necessary for Commerce to
complete its calculation.  *See Nippon Steel Corp. v. United States,* 337

F.3d 1373, 1381 (Fed. Cir. 2003) (stating that the use of facts otherwise available is to "fill in the gaps" when "Commerce has received less than the full and complete facts needed to make a determination"); *Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1255 (Fed. Cir. 2009) (noting that "{t}he legislative history of the {Uruguay Round Agreements Act} thus reveals that Congress intended § 1677e(a) to provide Commerce with gap-filling power to facilitate its implementation of the antidumping laws"); *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011) ("Commerce can only use facts otherwise available to fill a gap in the record"). Commerce is allowed to use facts available only when "necessary information is not available on the record," or an interested party has withheld requested information, significantly impeded the investigation, or provided unverifiable information. 19 U.S.C. § 1677e(a).

The prerequisite for the use of facts otherwise available pursuant to section 1677e(a) is a "gap" in the record resulting from missing information. The language in the legislative history confirms the intended purpose of section 1677e(a). The Statement of Administrative

Action for the implementation of the Uruguay Round Agreements Act

("SAA") provides the following regarding the use of facts otherwise

available:

> New section 776(a) requires Commerce and the
> Commission to make determinations on the basis
> of facts available where requested information is
> missing from the record or cannot be used
> because, for example, it has not been provided, it
> was provided late, or Commerce could not verify
> the information. . . . The agencies will be
> required, consistent with new section 782(e), to
> consider information requested from interested
> parties that: (1) is on the record; (2) was filed
> within the applicable deadlines; and (3) can be
> verified. … Section 776(a) generally will require
> Commerce to reach a determination by filling
> gaps in the record due to deficient submissions or
> other causes.

H.R. Rep. No. 103-316, at 869, *reprinted in* 1994 U.S.C.C.A.N. at 4198-

99. *see also NTN Bearing Corp. of America v. United States*, 368 F.3d

1369, 1377 (Fed. Cir. 2004) (noting that the "post-1994 version of the

statute permits the use of facts available when necessary information is

not available on the record"); *NSK Ltd. v. United States*, 358 F. Supp.

2d 1276, 1290 (Ct. Int'l Trade 2005) (noting that "{b}y its nature, a 'facts

available' analysis necessarily implies that Commerce used facts where

the actual facts are an insufficient basis for a complete analysis").

Commerce is also required to show that the interested party "failed to cooperate by not acting to the best of its ability to comply with a request for information."  19 U.S.C. § 1677e(b).  The Federal Circuit made clear that "the purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins."  *F.Lli de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000).  The Court has instructed Commerce that, in determining whether a party cooperated to the best of its ability, Commerce cannot apply AFA for a "failure to respond, but only under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made; *i.e.*, under circumstances in which it is reasonable to conclude that less than full cooperation has been shown."  *Nippon Steel*, 337 F.3d at 1383; *see also Changzhou Trina Solar Energy Co. v. United States,* 352 F. Supp. 3d 1316, 1326-27 (Ct. Int'l Trade 2018) ("*Changzhou Trina I*") ("The use of facts available allows Commerce to render determinations when information is missing and it may use an adverse inference if respondents fail to cooperate, but is not permitted to skip either of these steps on the way to use of

AFA.”); *Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261, 1270 (Ct. Int'l Trade 2018) (“Compliance with the 'best of its ability' standard is determined by assessing whether the respondent puts forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation”).

III.   Commerce's Determination is Based on Misstatements of Fact

The foundation of Commerce's application of AFA is based on Commerce's determination that screen shots from Teknik's accounting system were needed to confirm whether Teknik's reported sales and non-use of programs are accurate and complete.  *See* Final I&D Memo at 22, P.R. 341, Appx___.  Commerce reasoned that “{t}his information was necessary for Commerce's analysis to contextualize and validate the information Teknik submitted in its questionnaire response (*i.e.*, Commerce would have been *able to see the actual information as portrayed in Teknik's financial accounts and ledgers*).”  *See* Final I&D Memo at 22 (emphasis added), P.R. 341, Appx___.  Teknik submitted the actual account ledger so that Commerce would have a complete record upon which to see the actual information in its financial system. ILVQ Response at Exhibit V-14, C.R. 289, P.R. 322, Appx___.  Yet,

Commerce determined that Exhibit V-14 of the ILVQ Response showed the income from the GOT and was "a worksheet that does not contain screen shots from the actual account ledger that contains the underlying information." Final I&D Memo at 7, P.R. 341, Appx___. Commerce's conclusion is based on a misstatement of fact and is unsupported by the administrative record. Commerce incorrectly labeled Exhibit V-14 a "worksheet." *Id.* Exhibit V-14 is not a worksheet. *See* ILVQ Response at Exhibit V-14, C.R. 289, P.R. 322, Appx___. Exhibit V-14 of the ILVQ Response provides Teknik's complete and actual account ledger of which income was accounted for during the period of investigation ("POI").

The fact that Exhibit V-14 was the complete and actual account ledger for the POI was clearly set forth in Teknik's submissions. Teknik detailed in response to Question 5 of the questionnaire response the following:

> Any subsidy income received from the Government of Turkey would be credited in the account ledger [
>
>                                               ].
> Refer to Exhibit V-12, which shows that income received from the Government of Turkey under "Deduction of Taxable Income" was credited in this account. This year-end balance in account



> ledger [ ] is reported under [
>
> ] and [ ] forming part of [ ] in the audited financial statements submitted as Exhibit CVD-10. Refer to Exhibit V-13 for statement showing how account balance for [ ] ties with the audited financial statements. *Refer to Exhibit V-14 for POI account ledger for [ ]. The account ledger submitted at Exhibit V-14 contains all the transactions for the POI. Exhibit V-14 shows the summary of income by category.* From Exhibit V-14 it can be seen that only "Deduction of Taxable Income" of [ ] is from Government of Turkey. The screen shot for account of "Deduction of Taxable Income" of [ ] is submitted as Exhibit V-12. There are no excerpts from Turkish accounting principles that address the recording of government grants or subsidies. As a result, in accordance with Turkish Generally Accepted Accounting Principles, the amount is reported in account [
>
> ].

*Id.* at 6 (internal citations omitted) (emphasis added), C.R. 276, P.R. 320 Appx___. Likewise, the ILVQ Response's List of Exhibits detailed that Exhibit V-14 was the "GL of Other Extraordinary Profit & Loss" (*i.e.*, "general ledger"). *Id.*, C.R. 289, P.R. 322, Appx___. Teknik also detailed that this ledger was also duly reconciled with Teknik's audited

financial statements.  *Id*. at 7, C.R. 276, P.R. 320, Appx___; *see also id*. at Exhibit V-14, C.R. 289, P.R. 322, Appx___.

Commerce at no point acknowledges the actual account ledger requested in the ILVQ Response on the record.  Additionally, Commerce repeatedly and incorrectly describes Exhibit V-14 as a "worksheet" rather than the actual accounting ledger utilized in Teknik's system. As a result, Commerce's determination demonstrates a fundamental misunderstanding of the administrative record.  As a result, the *Final Determination* is unsupported by the administrative record.

## IV. Commerce Improperly Used Adverse Inferences in Selecting from Among the Facts Otherwise Available on Record

Commerce determined the benefits for the Deduction of Taxable Income for Exports, Foreign Market and Research and Market Entry Grants Program, Foreign Fair Support Program, and Exemption from Property Tax Program by applying facts available.  Commerce has failed to explain the reason that the screen shots were critical to verification when Commerce was provided the entire account ledger that the screen shots were requested of and it also failed to articulate an explanation as to the reason that it could not verify the information on record, especially when Commerce was provided more verifiable

information than requested.  Commerce's application of AFA because Teknik provided the entire account ledger rather than screenshots of exact same account ledger is both unreasonable and illogical.  Moreover, as noted above, Commerce makes factual misstatements in its application of AFA concerning the administrative record such that its determination is unsupported by the administrative record and thus contrary to law.

The administrative record is in direct contradiction to Commerce's inference that Teknik used and benefited from these four programs.  As the Court has directed,

> Commerce may not simply declare that the evidence cannot be verified and therefore, a gap exists.  That is not how it works.  Commerce must attempt verification in order to conclude that a gap exists related to that inquiry; and then only after Commerce finds that the "interested party has failed to cooperate by not acting to the best of its ability" can Commerce use an adverse inference to fill that gap.  19 U.S.C. § 1677e(b)(1). The AFA statute empowers Commerce to apply adverse inferences in those instances, but "*it may not do so in disregard of information of record that is not missing or otherwise deficient.*" *Zhejiang DunAn Hetian Metal*, 652 F.3d at 1348.

*Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1335, 1342-44 (Ct. Int'l Trade 2019) (emphases added).

Here, information related to Commerce's inquiry is neither missing nor demonstrably deficient. At no time during this proceeding did Teknik withhold or fail to provide information to Commerce. Quite the contrary; Teknik fully responded to each request for information within the time period requested by Commerce and in the requested format. Nor did Teknik in any way impede the proceeding; rather, Teknik acted in an exemplary fashion fully cooperating during each phase of the investigation. Commerce cannot ignore the administrative record in this proceeding, arbitrarily picking and choosing information to be considered, while selectively ignoring other information. To ignore the record and make a determination despite the overwhelming record evidence to the contrary can only be described as unreasonable and inconsistent with Commerce's mandate to administer the CVD law fairly and accurately.

Commerce's factual and legal errors with regards to each program is discussed separately below.

## A. Commerce Improperly Applied AFA for the Exemption for Property Tax Program and Deduction of Taxable Income Program

Commerce's use of AFA to find that Teknik benefited from the Exemption for Property Tax Program and Deduction of Taxable Income

Program was unreasonable and unlawful.  Commerce determined that Teknik did not cooperate to the best of its ability to comply with Commerce's request for information by not submitting requested information in the manner requested by Commerce.  *See* Final I&D Memo at 6-7, P.R. 341, Appx___.  In this instance, there is no absence of information such that there is a "gap" in the record concerning usage of the Exemption from Property Tax Program or Deduction of Taxable Income Program.  Commerce's finding is based on an inaccurate description of record evidence.  Teknik provided all information available, including the actual account ledger in its entirety to demonstrate to Commerce that no payment was made with respect to these programs during the POI.

In addressing the Exemption from Property Tax Program, Commerce made the following determination:

> Questions 4 and 5 of the Teknik ILV Questionnaire ask Teknik to provide screen shots from the relevant accounts in which it records benefits that it received from the GOT regarding the Exemption from Property Tax Program, for its deduction of taxable income and for accounts where it reports assistance from the GOT. Teknik provided a screen shot of the accounting entry for this assistance at Exhibit V-12 and stated that this assistance can be tied to its

> accounting ledger submitted as Exhibit V-14.
> However, Exhibit V-14, which shows the income
> received from the GOT, is a worksheet that does
> not contain screen shots from the actual account
> ledger that contains the underlying information.

*See* Final I&D Memo at 7, P.R. 341, Appx___.

First, Teknik explained in the ILVQ Response and Teknik's initial questionnaire submitted on June 15, 2020 that Exemption from Property Tax is not shown in Teknik's accounting system because there was no gain. Rather, there is an absence of payment. ILVQ Response at 5, C.R. 276, P.R. 320, Appx___; Initial Questionnaire Response at CVD-17, C.R. 67, P.R. 154, Appx___. Teknik does not file anything to receive benefits under this program. Teknik provided documentation from the municipality showing the fair value. ILVQ Response at Exhibit CVD-16.a, C.R. 277, P.R. 322, Appx___. Teknik provided documentation for the applicable property tax rate which was exempted. Initial Questionnaire Response at Exhibit CVD-16.b, C.R. 75, P.R. 155, Appx___. Teknik also provided a calculation of amount of property tax exemption at initial questionnaire response page CVD-16. Considering the substantial evidence of record, including Teknik's complete account ledger, Teknik demonstrated that there was no

43

payment made with respect to this program. Teknik provided all the documents and calculation for the amount of the property tax exemption. This information was sufficient to calculate the amount of property tax exempted. Teknik also clarified that since there is no gain to Teknik, it was not accounted and, therefore, Teknik could not submit a screen shot because it does not exist. ILVQ Response at 5, C.R. 276, P.R. 320, Appx___; Teknik's Rebuttal Case Brief at 9, C.R. 310, P.R. 331, Appx___. As the exemption was not accounted for due to the absence of a payment, Teknik could not provide a screen shot demonstrating the absence of such a payment.

Next, with respect to deduction of taxable income for exports, Commerce determined that Teknik did not cooperate to the best of its ability to comply with Commerce's request for information by not submitting requested information in the manner as requested by Commerce. *See* Final I&D Memo at 7, 24, P.R. 341, Appx___. Yet, Teknik provided the account entry that demonstrates receipt of this benefit at Exhibit V-12. ILVQ Response at Exhibit V-12, C.R. 276, P.R. 321, Appx___. Teknik received a credit of [          ] in its bank account. In the ILVQ Response, Teknik stated that "{t}he screen shot of

44

the accounting entry for receipt of the benefit under [

] is provided as Exhibit V-12". *Id*. at 5,

C.R. 276, P.R. 320, Appx___.  The first two pages in Exhibit V-12 are

the printout of vouchers used to record the income into the accounting

system.  *Id*. at Exhibit V-12, C.R. 276, P.R. 321, Appx___.  The other

pages in Exhibit V-12 are the documents in support of the accounting

voucher.  *Id*.  By providing a screen shot from the accounting system

showing receipt of TL [        ] along with bank advice, Teknik complied

with Commerce's request for submission of screen shot as requested in

the question 4 of the ILV Questionnaire.  Thereafter, at Exhibit V-14,

Teknik provided the complete ledger in which this income was

accounted.  *Id*. at Exhibit V-14, C.R. 289, P.R. 322, Appx___.  Providing

multiple screen shots of a big ledger would not have presented the

information in any meaningful sense.  In other words, Teknik provided

more verifiable information than that which Commerce requested to

support the lack of payment for deduction of taxable income.  Therefore,

Commerce's determination that Teknik did not comply with the

questionnaire requirements is not supported by the administrative

record.  The application of AFA for the Deduction of Taxable Income Program is unreasonable.

In question 5 of the ILV Questionnaire, Commerce requested screen shots in support of non-use programs.  Specifically, question 5 requested Teknik to provide screenshots of all accounts where government or subsidy income is or would be recorded.  In response, Teknik stated that any subsidy income received from the GOT would be credited in the account ledger [

].  ILVQ Response at 6, C.R. 276, P.R. 320, Appx___.  Teknik also submitted the complete POI account ledger in excel format instead of screen shot from the accounting system.  *Id*. at Exhibit V-14, C.R. 289, P.R. 322, Appx___. The account ledger submitted as Exhibit V-14 has all the transactions for the POI.  As Teknik explained to Commerce, Teknik submitted the complete ledger in excel format over screen shot because Teknik wanted to submit the complete ledger showing all the transactions for the POI as opposed to a screen shot which would have only provided Commerce with the POI total.  Teknik's Rebuttal Case Brief at 11, C.R. 310, P.R. 331, Appx___.

Question 5 of the ILVQ also requested Teknik to "{p}rovide a description of each amount indicated in the screenshots received from the GOT or any organization that may be considered an agency of the GOT that is greater than TRY 1,000,000".  ILV Questionnaire, P.R. 314, Appx___.  In response, Teknik submitted the complete POI ledger in excel containing an explanation about the nature of each transaction. The complete ledger provides for 362 transactions all of which were provided to Commerce for its verification. Submitting ledger in excel format in no way renders the actual account ledger unverifiable. Commerce was not satisfied with the excel version of the ledger during an in-person verification, it would have requested Teknik to provide the screen shots.  Please refer to Section A concerning Commerce's unlawful verification in this investigation.  Here, Commerce could have easily made a request to Teknik to submit screen shot if Commerce was not satisfied with the entire account ledger in excel format or could have asked questions if Commerce was confused by the administrative record.

In order to demonstrate that subsidy income received from GOT is credited in the account ledger [

], Teknik referred to Exhibit V-12.  ILVQ Response at 6, C.R. 276, P.R. 320, Appx___.  Exhibit V-12 provided Commerce the screen shot from Teknik's accounting system which showed the accounting of subsidy received from the GOT under the Deduction of Taxable Income Program.  *Id*. at Exhibit V-12, C.R. 276, P.R. 321, Appx___.  Teknik also reconciled how the balance in account ledger [

] tied to the audited financial statements.  *See id*. at Exhibit V-13, C.R. 288, P.R. 322, Appx___.  Exhibit V-13 shows that the total balance for ledger account [

]

is reported as part of "Other Revenues" and "{d}own payment revenue arising from factories sales cancelation" in the audited financial statement as part of the initial questionnaire at Exhibit CVD-10 (note 19.1 page 38).  *Id*.; *see also* Initial Questionnaire Response at Exhibit CVD-10, C.R. 74, P.R. 155, Appx___.

In summary, Teknik fully answered questions 4 and 5 of Commerce's ILVQ Questionnaire.  A summary of Teknik's responses are as follows:

a. In question 4, Commerce requested screen shots for use of Exemption from Property Tax Program.  Teknik did not submitted any screen shot because it does not exist. Teknik already submitted all the documents and working showing calculation of benefit under this program.

b. In question 4, Commerce also requested screen shots to demonstrate use of the Deduction of Taxable Income Program. Teknik did so at Exhibit V-12 along with the bank advice for receipt of subsidy.  Commerce failed to take note of this Exhibit and concluded that Teknik failed to co-operate to the best of its ability by not providing the screen shot from its accounting system.

c. In question 5, Commerce first requested that Teknik "{p}rovide screenshots of all accounts where government or subsidy income is or would be recorded."  ILV Questionnaire, P.R. 314, Appx___.  Teknik submitted the complete POI ledger having all the transactions at ILVQ Response Exhibit V-14 in excel format.  The account ledger in excel format no way renders the information incorrect or unverifiable to warrant AFA.

d.  Question 5 also states that "{t}he screenshots should show all
accounting entries in the relevant accounts for the POI.".  *Id*.
To fully respond to the question, Teknik submitted the POI
ledger in excel format.  Teknik emphasized the content of the
information over the format of the information because Teknik
wanted to ensure that its response was complete, accurate and
thorough for Commerce's verification.

e.  Question 5 then states that "{p}rovide a description of each
amount indicated in the screenshots received from the GOT or
any organization that may be considered an agency of the GOT
that is greater than TRY 1,000,000." *Id*.  Again, in order to full
respond to this question, Teknik submitted the POI ledger in
excel format as Exhibit V-14 with a separate column containing
the explanation for each transaction in the ledger.

f.  Question 5 then states that "{a}dditionally, identify in the
screenshots all amounts you have previously reported to
Commerce as "other subsidy programs'V grants." *Id*.  Teknik
responded to this part of the question by referring to the
accounting screen shot in Exhibit V-12.

g. Question 5 then states "please be sure to include electronic versions of any worksheets, where applicable, that are necessary to complete this exercise." *Id.* Teknik responded to this question by submitting the excel formation of the ledger along with Exhibit V-13 showing the balance in account ledger 679.001.098 ties to the audited financial statement.

The above summary clearly shows that Teknik has fully responded to question 4 and 5 of the ILV Questionnaire.

Third, as set forth in Section C above, Commerce's description of Exhibit V-14 is inaccurate. *Id.* Commerce's conclusion is based on a misstatement of fact and is unsupported by the administrative record. Commerce incorrectly labeled Exhibit V-14 a "worksheet." *See* Final I&D Memo at 7, P.R. 341, Appx___. Exhibit V-14 is not a worksheet. ILVQ Response at Exhibit V-14, C.R. 289, P.R. 322, Appx___. Exhibit V-14 of the ILVQ Response provides Teknik's complete and actual account ledger of which income was accounted for during the period of investigation ("POI"). The fact that Exhibit V-14 was the complete and actual account ledger ([

]) was clearly set forth in Teknik's submissions. ILVQ

Response at 6, C.R. 276, P.R. 320, Appx___.  Likewise, the ILVQ

Response's List of Exhibits detailed that Exhibit V-14 was the "GL of

Other Extraordinary Profit & Loss" (*i.e.*, "general ledger").  *Id*.  Teknik

also detailed that this ledger was also duly reconciled with Teknik's

audited financial statements.  *Id*. at 7, C.R. 276, P.R. 320, Appx___; *id*.

at Exhibit V-14, C.R. 289, P.R. 322, Appx___.  In light of this error,

Commerce's determination, in part, is based on a factual inaccuracy

that is unsupported by the administrative record.

The screen shots are not needed to determine usage as Commerce

was provided the entire actual account ledger to show the lack of

payment for this program.  Commerce failed to provide any information

or analysis as to whether in fact the lack of screen shots created a gap

in the record that required the application of AFA.  *Clearon Corp. v.*

*United States*, 359 F. Supp 3d 1344, 1360 (Ct. Int'l Trade 2019)

("Commerce's use of facts available cannot be sustained because the

Department has failed to show that the information it seeks is

necessary to its determination.").  In other words, Teknik provided more

verifiable information than that which Commerce requested to support

the lack of payment for Exemption for Property Tax Program and

Deduction of Taxable Income Program.  Commerce has not accounted

for this fact.

Accordingly, there are no gap in the record of this proceeding that

justify Commerce's use of facts available.  By providing the complete

POI ledger in excel format over screen shot, Teknik focused on the

content of the information over the format of the information.  As a

result, Commerce applied AFA for providing more accurate and detailed

information completely disregarding the content of the information.

## B. Commerce Improperly Applied AFA Foreign Market Research and Market Entry Grants and Foreign Fair Support Programs

Commerce's application of AFA for the Foreign Market Research

and Market Entry Grants Program and the Foreign Fair Support

Program is unsupported by substantial evidence.  Commerce fails to

provide any explanation of its application of AFA for these two

programs, stating:

> "{t}he GOT provided necessary information for
> financial contribution and specificity for the
> Foreign Market Research and Market Entry
> Grants Program and the Foreign Fair Support
> Program.  Because we now find that we cannot
> verify the amount of the benefit that Teknik
> received for the four programs referenced above,
> we are now applying AFA to assign a program

rate based on Commerce's CVD AFA
methodology."

*See* Final I&D Memo at 7, P.R. 341, Appx___.

Commerce's determination is based on Commerce's conclusion

that Teknik failed to provide requested information in the form and

manner requested by Commerce with respect to its reported sales

information and its non-use of certain programs under review." *See*

Final I&D Memo at 6, P.R. 341, Appx___.  However, such a

determination is inconsistent with the evidence of record.  Commerce

provided the following rationale:

> The GOT and Teknik each reported that Teknik
> received funds from these two programs during
> the AUL, but not during the POI.  Generally,
> Commerce relies on usage information from the
> companies to confirm whether a benefit was
> received during the period under examination.
> As explained above, Teknik failed to provide the
> requested screen shots identifying that it did not
> receive any benefits under these grant programs
> from the GOT during the POI, which prevented
> Commerce from verifying whether Teknik
> received a benefit during the POI, and whether
> the benefit received during the AUL is allocable
> during the POI.  Therefore, based on facts
> available with the application of an adverse
> inference in accordance with sections 776(a) and
> (b) of the Act, we find that Teknik benefitted from
> these grants during the POI.

*See id.* at 23-24, P.R. 341, Appx___.

Importantly, Commerce did not verify or ask any questions in Commerce's ILV Questionnaire specific to Foreign Market Research and Market Entry Grants Program and the Foreign Fair Support Program during the POI.  These programs were not part of Commerce's ILV Questionnaire.  Commerce cannot simply declare that the evidence cannot be verified and therefore a gap exists, particularly when Teknik supplied Commerce with its account ledgers for Commerce's review and analysis.  ILVQ Response at Exhibit V-12, C.R. 276, P.R. 321, Appx___. Commerce asked the following questions related to non-use:

> Provide screenshots of all accounts where government or subsidy income is or would be recorded (if such income is booked into multiple accounts, provide screenshots for only one of the accounts). Provide relevant excerpts from Turkish Generally Accepted Accounting Principles establishing that these accounts would include any disbursements of grants from the Government of Turkey (GOT), and any rebates of taxes or fees. The screenshots should show all accounting entries in the relevant accounts for the POI. Provide a description of each amount indicated in the screenshots received from the GOT or any organization that may be considered an agency of the GOT that is greater than TRY 1,000,000. Additionally, identify in the screenshots all amounts you have previously reported to Commerce as "other subsidy

> programs"/grants.  Please be sure to include
> electronic versions of any worksheets, where
> applicable, that are necessary to complete this
> exercise.

ILV Questionnaire, P.R. 314, Appx___.

In response to question 5 above, Teknik provided the actual account ledger where all GOT subsidies were recorded along with an accounting entry.  *See* ILVQ Response at 6, C.R. 276, P.R. 320, Appx___ (responding to Commerce's non-use questionnaire); *Id*. at Exhibit V-12, C.R. 276, P.R. 321, Appx___ (account document showing income received from GOT was credited to the specific account); *Id*. at Exhibit V-13, C.R. 288, P.R. 322, Appx___ (providing statement showing how the account balance for the specific account ledger ties with Teknik's audited financial statements); *Id*. at Exhibit V-14, C.R. 289, P.R. 322, Appx___ (actual account ledger for POI).

In addressing the Foreign Market Research and Market Entry Grants Program and the Foreign Fair Support Program, Commerce failed to acknowledge that Teknik submitted its complete and actual account ledger in which other government subsidies were recorded in addition to the accounting entries.  Final I&D Memo at 23, P.R. 341, Appx___.  Information placed on the record by GOT and Teknik as to

non-use is sufficient for Commerce to verify whether the program was

utilized. Teknik and GOT's statements as to non-use are clear,

unequivocal, consistent with other record evidence, and accompanied by

the required factual certifications of truthfulness and accuracy.

The administrative record demonstrates that Teknik did not avail

Foreign Market Research and Market Entry Grant programs during the

POI. *See* GOT's June 15, 2020 QR at 156-183, C.R. 25, P.R. 104,

Appx___ (reporting benefits received under Foreign Market Research

and Market Entry Grants Program between June 2012 and 2019 for

each mandatory respondent); *see also id*. at 141-142, C.R. 25, P.R. 104,

Appx___ (reporting benefits received under the Foreign Fair Support

Program between June 2012 and 2019 for each mandatory respondent);

Initial Questionnaire Response at CVD-39, C.R. 67, P.R. 154, Appx___

("Teknik has not availed any such scheme during the POI period . . .

Please note that Teknik received an amount . . . in the year 2012" for

the Foreign Market Research and Market Entry Grants Program); *Id*.

at CVD-38, C.R. 67, P.R. 154, Appx___ ("Teknik has not availed {the

Foreign Fair Support Program} during POI period . . . Teknik

previously used this support program in the year 2012, 2015 and 2017 .

. . this program is a recurring program and, therefore, not applicable for

POI"). There is no evidence of record to refute this information.

Accordingly, Commerce's determination that Teknik did not

cooperate to the best of its ability to comply with Commerce's request

for information by not submitting requested information in the manner

as requested by Commerce is not supported by substantial evidence and

not in accordance with law.

V. Commerce's Decision to Reject Teknik's Sales Reconciliation is
Contrary to Law and Unsupported by the Administrative Record

In the *Final Determination*, Commerce improperly rejected

Teknik's sales reconciliation even though Commerce accepted the exact

same methodology on the AD side of the case. Commerce's

determination was an abuse of discretion and not supported by the

administrative record. As support of its AFA determination, Commerce

pointed to Teknik's sales reconciliation noting:

> Question 1 of the Teknik ILV Questionnaire asks
> Teknik to provide a reconciliation to its total and
> export sales as reported in its June 15, 2020
> questionnaire response and its 2019 accounting
> records and year-end financial statement.
> Question 1 also asks Teknik to provide screen
> shots to support all reported amounts used in the
> reconciliation. Although Teknik provided
> worksheets in an attempt to reconcile the sales

58

> information as requested by Commerce, the
> worksheets do not contain screen shots for all of
> the accounting adjustments that are included in
> the spreadsheets, and the worksheets refer to
> other worksheets that reference account ledgers
> but do not contain screen shots of the actual
> account ledgers.

*See* Final I&D Memo at 6, P.R. 341, Appx___.

Commerce's determination as to the sales reconciliation is in
direct conflict with Commerce's findings in the concurrent AD
investigation, for which Teknik was a mandatory respondent. In the
AD investigation, Teknik used the exact same reporting methodology.
Commerce accepted Teknik's reporting methodology and screen shots
provided. Commerce rejected Petitioner's request to use AFA noting:

> We disagree with the petitioners, and find that
> Teknik has provided the necessary information to
> reconcile the subject merchandise sold by Teknik
> and its affiliated trading company, TMT, to AAM;
> and, to also reconcile the subject merchandise
> sold by AAM to its unaffiliated U.S. customers.
> In both cases, the information has been reconciled
> to TMT's and AAM's audited financial
> statements, respectively. *The application of
> partial adverse facts available is therefore not
> warranted.*

*See* AD Final I&D at 36-38 (emphasis added).

As the above demonstrates, Commerce rendered two different and
conflicting determinations in two concurrent investigations with respect

to the same information.  Commerce's final determination is arbitrary and capricious and otherwise contrary to law.  This Court instructs that if "Commerce acted differently in this case than it has consistently acted in similar circumstances in without reasonable explanation, then Commerce's actions will have been arbitrary." *Consol. Bearings*, 348 F.3d. at 1007.  For example, in *Carpenter Tech. Corp. v. United States*, the Court considered Commerce's decision to collapse certain Indian steel producers in an administrative review, contrary its decision not to collapse the entities in the previous administrative review.  *Carpenter Tech. Corp. v. United States*, 28 C.I.T. 1329, 344 F. Supp. 2d 750 (2004).  The Court remanded the matter back to Commerce to recalculate individual AD rates for the individual companies based upon its past practice.  *Id*. at 1336.  In making its decision, the Court noted that the fact patterns were essentially the same, referencing only two changes between the two reviews.  *Id*. at 1335.

The facts here are even more compelling.  The AD and CVD investigations cover the same company, products, and period of time. The same documentation was provided at verification for sales reconciliation purposes.  Commerce accepted this documentation in the

AD segment of the proceeding and declined to apply AFA as requested by Petitioner.  By contrast, in the underlying determination Commerce ignored the documentation provided and applied AFA.  Accordingly, Commerce's decision to apply AFA and reject Teknik's sales reconciliation in the CVD side of the case while accepting the same documentation and refusing to apply AFA in the AD side of the case is an abuse of discretion, arbitrary and capricious and unsupported by substantial evidence.

## CONCLUSION

For the reasons set forth in this brief, Teknik respectfully requests that this Court hold that Commerce's *Final Determination* is not supported by substantial evidence and otherwise not in accordance with law.  Teknik respectfully requests this Court to remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision.

Respectfully Submitted,

By:   /s/ Kristen Smith
      Kristen Smith
      Sarah E. Yuskaitis

**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247

*Counsel to Teknik Aluminyum Sanayi A.S.*

Dated: November 22, 2021

## <u>Certificate of Compliance with Chamber Procedure 2(B)(1)</u>

The undersigned hereby certifies that the foregoing brief contains 11,399 words, inclusive of footnotes, exclusive of the table of contents, table of authorities, glossary, certificates of counsel, and counsel's signature block, and therefore complies with the maximum 14,000-word count limitation set forth in the Standard Chamber Procedures of the U.S. Court of International Trade.

By:   <u>/s/ Sarah E. Yuskaitis</u>
*Counsel for Teknik Aluminyum Sanayi A.S.*

Dated: November 22, 2021