UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| TEKNIK ALUMINYUM SANAYI A.S., <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, <br><br> *Defendant-Intervenor.* | Court No. 21-00251 <br><br> **NON-CONFIDENTIAL VERSION** <br><br> Business Proprietary Information Removed at Page 33 |

## PLAINTIFF TEKNIK ALUMINYUM SANAYI A.S.'S FINAL REPLY BRIEF

Kristen Smith
Sarah E. Yuskaitis
**Sandler Travis & Rosenberg, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247

*Counsel to Teknik Aluminyum Sanayi A.S.*

Dated: March 25, 2022

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................... 1

ARGUMENT .............................................................................................. 1

I.   Commerce Ignored Acknowledged Statutory and Regulatory
Verification Procedures ......................................................................... 1

   A.  Plaintiff Challenges Commerce's Modified Verification
   Procedures and Application of These Procedures .............................. 5

   B.  Commerce is Required To Issue A Verification Report ................. 9

II.  Commerce's Application of Adverse Facts Available is Contrary to
the Administrative Record and Contrary to Law ................................. 20

   A.  Teknik Provided Source Documentation Verifying Questionnaire
   Responses ......................................................................................... 20

   B.  Commerce Improperly Applied AFA ........................................... 31

   C.  Commerce's Decision to Reject Teknik's Sales Reconciliation Was
   Unsupported by Substantial Evidence and Contrary to Law ........... 38

CONCLUSION ........................................................................................ 39

# TABLE OF AUTHORITIES

## Cases

*Acciai Speciali Terni S.P.A. v. United States*,
   142 F Supp. 2d 969 (Ct. Int'l Trade 2001)....................................... 32, 33

*Agro Dutch Industries Limited v. United States*,
   508 F.3d 1024 (Fed. Cir. 2007) ............................................................. 13

*Auer v. Robbins*,
   519 U.S. 452 (1997)................................................................................ 6

*Bomont Indus. v. United States*,
   733 F. Supp. 1507 (Ct. Int'l Trade 1990)............................................. 21

*Bonney Forge Corporation v. United States*,
   2022 WL 304956, Slip Op. No. 22-8 (Ct. Int'l Trade Feb. 2, 2022)........ 7

*Bowe-Passat v. United States*,
   17 CIT 335 (1993) ................................................................................... 5

*Canadian Solar Int'l Ltd. v. United States*,
   378 F. Supp. 3d 1292 (Ct. Int'l Trade 2019)....................................... 11

*Carr v. Saul*,
   141 S. Ct. 1352 (2021)......................................................................... 14

*Chase Bank USA, N.A. v. McCoy*,
   562 U.S. 195 (2011).............................................................................. 6

*Chevron, U.S.A., Inc. v. Nat. Res Defendant's Council, Inc.*,
   467 U.S. 837 (1984)............................................................................... 4

*Christopher v. SmithKline Beecham*,
   567 U.S. 142 (2012).............................................................................. 6

*Consol. Bearings Co. v. United States*,
   166 F.Supp.2d 580 (Ct. Int'l Trade 2001)........................................... 13

*Consol. Bearings Co. v. United States*,
   348 F.3d 997 (Fed. Cir. 2003) ............................................................. 17

*Corus Staal BV v. United States*,
　502 F.3d 1370 (Fed. Cir. 2007) ............................................................. 13

*Goodluck India Limited v. United States*,
　11 F.4th 1335 (Fed. Cir. 2021) ............................................................. 29

*Guangdong Wireking Housewares & Hardware Co. v. United States*,
　900 F. Supp. 2d 1362 (Ct. Int'l Trade 2013), *aff'd* 745 F.3d 1194 (Fed.
　Cir. 2014) ............................................................................................ 24

*Hung Vuong Corporation v. United States*,
　483 F. Supp. 3d 1321 (Ct. Int'l Trade 2020) ....................................... 30

*Ipsco, Inc. v. United States*,
　899 F.2d 1192 (Fed. Cir. 1990) .............................................................. 5

*Itochu Bldg. Prods. v. United States*,
　733 F.3d 1140 (Fed. Cir. 2013) ............................................................ 11

*McGee v. United States*,
　402 U.S. 479 (1971) .............................................................................. 10

*McKart v. United States*,
　395 U.S. 185 (1969) .............................................................................. 10

*Micron Tech. v. United States*,
　117 F.3d 1386 (Fed. Cir. 1997) .............................................................. 4

*Nippon Steel Corp. v. United States*,
　118 F.Supp.2d 1366 (Ct. Int'l Trade 2000) ...................................... 5, 27

*Parisi v. Davidson*,
　405 U.S. 34 (1972) ................................................................................ 11

*Pro-Team Coil Nail Enterprise, Inc vs. United States*,
　419 F.Supp.3d 1319 (Ct. Int'l Trade 2019) ..................................... 24, 25

*Rhone Poulenc, Inc. v. United States*,
　899 F.2d 1185 (Fed. Cir. 1990) ............................................................ 21

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
　141 S. Ct. 63, 208 L.Ed.2d 206 (2020) .................................................. 7

*Rubberflex Sdn. Bhd. v. United States*,
  59 F. Supp. 2d 1338 (Ct. Int'l Trade 1999)..............................................4

*Thomas Jefferson Univ. v. Shalala*,
  512 U.S. 504 (1994)..............................................................................6

*Tianjin Machinery Import & Export Corp. v. United States*,
  353 F. Supp 2d 1294 (Ct. Int'l Trade 2004)..........................................32

*Torrington Co. v. United States*,
  68 F.3d 1347 (Oct. 24, 1995)................................................................8

*Trust Chem Co. v. United States*,
  791 F. Supp.2d 1257 (Ct. Int'l Trade 2011)..........................................11

*Universal Polybag Co. v. United States*,
  577 F. Supp. 2d 1284 (Ct. Int'l Trade 2008)........................................35

*Wheatland Tube Corp. v. United States*,
  841 F. Supp. 1222 (Ct. Int'l Trade 1993)...............................................4

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
  716 F.3d 1370 (Fed. Cir. 2013) ...........................................................14

*Zhaoqing Tifo New Fibre Co. v. United States*,
  60 F. Supp. 3d 1328 (Ct. Int'l Trade 2015)..........................................12

## Statutes and Regulations

19 C.F.R § 351.307(c).............................................................................18

19 C.F.R. § 351.301(c)(5) ......................................................................25

19 C.F.R. § 351.307 ...............................................................................6

19 C.F.R. § 351.307(c)..................................................................... passim

19 U.S.C. § 1677m(i)...........................................................................1, 8

19 U.S.C. § 1677m(i)(1) .......................................................................5, 8

28 U.S.C § 2637(d) ...............................................................................13

## Other Authorities

Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296 (May 19, 1997)....................................................................................7

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc 103-316, Vol. 1 (1994) .....................2, 18, 20

## Administrative Decisions

*Brake Rotors from the People's Republic of China*, 64 Fed. Reg. 61,581, 61,587-89 (Dep't of Commerce Nov. 12, 1999) .......................................7

*Polyethylene Terephthalate Resin from Pakistan*, 83 Fed. Reg. 48,281, 48,283 n.6 (Dep't of Commerce Sep. 24, 2018).......................................8

# **<u>GLOSSARY</u>**

Adverse Facts Available …………………………………………………AFA

In Lieu of Verification Questionnaire ………………..…………ILVQ

Period of Investigation…………………………………………………POI

Quantity and Value……………………………………………… Q&V

Teknik Aluminyum Sanayi A.S………………………………………Teknik

# INTRODUCTION

Plaintiff Teknik Aluminyum Sanayi A.S. ("Teknik" or "Plaintiff") respectfully submits the following brief in reply to response briefs from Defendant United States (the "Government"), ECF No. 27 ("Def. Br."), and Defendant-Intervenors, The Aluminum Association Common Alloy Aluminum Sheet Working Group and its individual members, Aleris Rolled Products, Inc., Arconic, Inc., Constellium Rolled Products Ravenswood, LLC, JW Aluminum Company, Novelis Corporation, and Texarkana Aluminum Inc. ("Defendant-Intervenors"), ECF 29 ("Def.-Int. Br.").

# ARGUMENT

## I.   Commerce Ignored Acknowledged Statutory and Regulatory Verification Procedures

As Defendant properly acknowledges, Commerce is required to conduct verification in making a final determination in an investigation.  Def. Br. at 17-18.  Pursuant to 19 U.S.C. § 1677m(i), Commerce "*shall* verify all information relied upon in making a final determination in an investigation."  19 U.S.C. § 1677m(i) (emphasis added).  Commerce's regulations unconditionally set forth verification procedures, including, for instance, the issuance of a verification report

prior to promulgation of a final determination.  *See* Statement of

Administrative Action Accompanying the Uruguay Round Agreements

Act, H.R. Doc 103-316, Vol. 1 (1994) ("SAA") at 868; 19 C.F.R.

§ 351.307(c) ("The Secretary *will report* the methods, procedures, and

results of a verification under this section prior to making a final

determination in an investigation. . . ").  Plaintiff, a first-time

mandatory respondent, relied on Commerce to comply with the Act's

fundamental, unambiguous requirements and those requirements

enacted by Commerce's regulation.  Commerce affirmed its intent to

comply with statute and regulation in its *Preliminary Determination*,

setting forth that "{a}s provided in section 782(i)(1) of the Act,

Commerce intends to verify the information relied upon in making its

final determination." *Common Alloy Aluminum Sheet From The*

*Republic of Turkey: Preliminary Affirmative Countervailing Duty*

*Determination, Preliminary Affirmative Determination of Critical*

*Circumstances in Part, and Alignment of Final Determination With*

*Final Antidumping Duty Determination*, 85 Fed. Reg. 49,629, 49,630

(Dep't of Commerce Aug. 14, 2020) ("*Preliminary Determination*"), P.R.

235, Appx1044-1046.  On January 14, 2021, five months after the

publication of the *Preliminary Determination* and less than two months prior to the issuance of the *Final Determination*, Commerce issued an "in lieu of verification questionnaire" to Teknik. *See Letter from Mark Hoadley, Program Manager to Teknik Aluminyum Sanayi A.S., Re: Countervailing Duty Investigation of Common Alloy Aluminum Sheet from Turkey: In Lieu of Verification Questionnaire* (Jan. 14, 2021) ("ILVQ"), P.R. 314, Appx2361-2364; *see also Common Alloy Aluminum Sheet from the Republic of Turkey: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, in Part*, 86 Fed. Reg. 13315 (Mar. 8, 2021) ("*Final Determination*"), P.R. 344, Appx1108-1111; *Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation of Common Alloy Aluminum Sheet from the Republic of Turkey* (Dep't of Commerce, Mar. 1, 2021) ("Final I&D Memo"), P.R. 341, Appx1062-1107.

Here, Commerce's verification procedures deprived Plaintiff from meaningful participation in verification. Moreover, Commerce's failure to comply with 19 C.F.R. § 351.307(c) meant that Plaintiff was unaware how this information was treated, what information was accepted for

purposes of "verification," and what, if any, factual inaccuracies or misunderstandings on the part of Commerce resulted from the ILVQ procedures established in this investigation.  While Commerce generally has the latitude to "derive {its} verification procedures *ad hoc*" and the court reviews these procedures for abuse of discretion, *Micron Tech. v. United States*, 117 F.3d 1386, 1395-96 (Fed. Cir. 1997), such discretion is not absolute.  *See Rubberflex Sdn. Bhd. v. United States*, 59 F. Supp. 2d 1338, 1346 (Ct. Int'l Trade 1999) ("In spite of, or perhaps because of, the wide latitude given Commerce in conducting reviews and verifications, however, 'the Court must be ever vigilant of abuse of discretion by the agency.'") (quoting *Wheatland Tube Corp. v. United States*, 841 F. Supp. 1222, 1227 (Ct. Int'l Trade 1993)).  An agency's interpretation of an ambiguous statute is only entitled to deference where it is reasonable and "based on a permissible construction of the statute."  *Chevron, U.S.A., Inc. v. Nat. Res Defendant's Council, Inc.*, 467 U.S. 837, 842- 43 (1984); *see also Micron Tech*, 117 F.3d at 1397 (noting that Commerce's verification process must "comport{} with a permissible interpretation of the statutory requirement").  In the underlying investigation, Commerce's verification process did not

comport with a permissible interpretation of Commerce's statutory requirements as Teknik was stripped of the ability to meaningfully participate in the bilateral and interactive nature of verification.

A. Plaintiff Challenges Commerce's Modified Verification Procedures and Application of These Procedures

Defendant alleges that Commerce properly applied its procedures to Teknik.  Def. Br. at 22-24.  However, Commerce's modified verification procedures abandoned Commerce's typical verification procedures and requirements of on-site verification, which by its nature, is supposed to be an interactive exercise.  *See e.g.,* Pl. Br. at 19-29; *see also Nippon Steel Corp. v. United States*, 118 F.Supp.2d 1366, 1381 n11 (Ct. Int'l Trade 2000) ("Commerce's verification procedures must allow meaningful participation by respondent"); *Bowe-Passat v. United States*, 17 CIT 335, 339 (1993) (noting that "{t}he review process is {supposed to be} bilateral and interactive"); *Rubberflex*, 59 F.Supp.2d at 1345. Commerce failed to conduct a meaningful verification consistent with 19 U.S.C. § 1677m(i)(1) and, as a result, the procedures here do not approximate an on-site verification.

Commerce abuses its administrative discretion where its procedures "contravene{} statutory objectives."  *Ipsco, Inc. v. United*

*States*, 899 F.2d 1192, 1195 (Fed. Cir. 1990); *see also Rubberflex*, 59 F.

Supp. 2d at 1346 ("{W}hile Commerce generally has discretion to

schedule a review and allocate resources to a review as it sees fit, it

must do so within the confines of its statutory mandates.  When its

actions compromise the accuracy of dumping margins, then it has

abused its discretion.").  Commerce's interpretation will not be

considered controlling when "there is reason to suspect that the

agency's interpretation 'does not reflect the agency's fair and considered

judgment on the matter in question.'" *Christopher v. SmithKline

Beecham*, 567 U.S. 142, 143-44 (2012) (*quoting Auer v. Robbins*, 519

U.S. 452, 462 (1997) and *citing Chase Bank USA, N.A. v. McCoy*, 562

U.S. 195, 209 (2011)).  "This might occur when the agency's

interpretation conflicts with a prior interpretation. . . ." *Id.* (*citing

Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994)).

Commerce's regulations do not contemplate any circumstances where a

verification and/or the release of a verification report are not required.

*See generally* 19 C.F.R. § 351.307.  Indeed, the Preamble to Commerce's

regulations makes clear that the verification report constitutes a critical

piece of "evidence on the record that the Department must consider in

making its final determination." Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,337 (May 19, 1997).

In this investigation, Commerce departed from procedures of typical verifications due to the COVID-19 pandemic. While there are instances where Commerce may modify its verification procedures, Commerce must still comport with its statutory requirements. As this Court has recently found, "COVID did not suspend the general principles of administrative law." *Bonney Forge Corporation v. United States*, 2022 WL 304956, Slip Op. No. 22-8 (Ct. Int'l Trade Feb. 2, 2022) (*comparing Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68, 208 L.Ed.2d 206 (2020) (per curiam) ("{E}ven in a pandemic, the Constitution cannot be put away and forgotten.")). Indeed, Defendant cites to two separate instances in which, while on-site verification was not conducted, Commerce continued to conduct verification in a live setting, albeit at an off-site location. Def. Br. at 19 (citing *Brake Rotors from the People's Republic of China*, 64 Fed. Reg. 61,581, 61,587-89 (Dep't of Commerce Nov. 12, 1999); *Polyethylene Terephthalate Resin*

*from Pakistan*, 83 Fed. Reg. 48,281, 48,283 n.6 (Dep't of Commerce Sep. 24, 2018)).[1]

Commerce abused its administrative discretion when it developed a procedural framework that contravened the statute's objectives.  At no point during the investigation did Commerce explain how the application of its verification procedures comply with 19 U.S.C. § 1677m(i) or how the application of these procedures was approximate to the verification procedures set forth by statute.  Rather, Commerce merely acknowledged that it was unable to conduct a statutorily consistent verification.  *See* Final I&D Memo at 6 P.R. 341, Appx1067 ("{W}e were unable to conduct on-site verification of the information relied upon in making our final determination in this investigation, *pursuant to section 782(i) of the Act*.").  Commerce's failure to conduct a meaningful verification and in turn issue a verification report is

---

[1] Defendant also cites to *Torrington Co. v. United States*, 68 F.3d 1347 (Oct. 24, 1995), which is distinguishable. Def. Br. at 18-19.  In *Torrington*, verification was not required as it was the first administrative review. *Torrington Co.*, 68 F.3d at 1350.  The issue before the Court was whether there was "good cause for verification" and Torrington challenged Commerce's failure to conduct the verification.  *Id*. at 1350-51.  Here, verification is required.  The statute prescribes that Commerce "*shall* verify all information relied upon in making a final determination in an investigation."  19 U.S.C. § 1677m(i)(1) (emphasis added).

unreasonable in this investigation because Commerce had ample tools at its disposal to approximate on-site verification to ensure that Teknik was provided the opportunity to participate in the bilateral and interactive nature of verification, and Commerce to ensure the issuance of a verification report.  A remand is required so that Commerce may undertake a proper verification both methodologically and procedurally, which includes issuance of a verification report, and issuance of a final determination that complies with the unambiguous requirements of Commerce's statute.

B. Commerce is Required To Issue A Verification Report

Defendant argues that this Court should deny Plaintiff relief from Commerce's inadequate "verification" procedures because Plaintiff allegedly (1) failed to exhaust administrative remedies and (2) that Commerce complied with the regulation's requirements and was not required to issue a verification report.  Def. Br. at 25-28.  First, the exhaustion doctrine does not support Commerce's attempt at impunity from its statutory obligations.  Second, Defendant's contentions are contrary to the administrative record and Commerce's statutory obligations.

1. Administrative Remedies Were Exhausted With Respect to
   Commerce's Verification Procedures

Defendant first alleges that this Court should deny Plaintiff relief

from Commerce's "verification" procedures because Plaintiff failed to

exhaust their administrative remedies by challenging the unlawful

verification procedures during the investigation.  Def. Br. at 25-27.

Defendant seeks to insulate Commerce from its obligations to adhere to

its statutory requirements, unless interested parties express

Commerce's foundational statutory obligations.  Defendant's argument

is unreasonable and lacks practical application.  Moreover, Defendant's

arguments are not permitted by the exhaustion doctrine.  Commerce

acknowledged its statutory obligations related to verification during the

investigation and cannot avoid scrutiny under these circumstances.

There is no practical purpose to such argument, and it is not permitted

by the exhaustion doctrine.

The application of the exhaustion doctrine is a practical question.

The Supreme Court has dictated that "the exhaustion requirement is

not to be applied 'blindly in every case.'"  *McGee v. United States*, 402

U.S. 479, 485 (1971) (*quoting McKart v. United States*, 395 U.S. 185,

201 (1969)).  The practical application must weigh the purposes of the

exhaustion requirement against the abrogation of a plaintiff's right to judicial review and lawful administrative decision-making. *See Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013) (overturning the CIT's use of the exhaustion doctrine); *Mcgee*, 402 U.S. at 485 (affirming the use of the exhaustion doctrine "should be assessed in light of a discrete analysis of the particular default in question, to see whether there is a governmental interest compelling enough to justify the forfeiting of judicial review"). "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). This Court has explained that "{t}he determinative question {regarding administrative exhaustion} is whether Commerce was put on notice of the issue." *Canadian Solar Int'l Ltd. v. United States*, 378 F. Supp. 3d 1292, 1305 n.14 (Ct. Int'l Trade 2019) (citing *Trust Chem Co. v. United States*, 791 F. Supp.2d 1257, 1268 n27 (Ct. Int'l Trade 2011)) (internal quotations omitted).

Here, Commerce was not denied the opportunity to act "within its special competence." *Parisi*, 405 U.S. at 37. Commerce was also clearly "on notice" of its statutory obligations in conducting verifications and the procedures related therein. Commerce stated in its *Preliminary Determination* that "{a}s provided in section 782(i)(1) of the Act, Commerce intends to verify the information relied upon in making its final determination." *Preliminary Determination* at 49,629, P.R. 235, Appx1044. Commerce's acknowledgment to its statutory obligations as provided in section 782(i)(1) of the Act is fatal to its argument that Commerce was "denied the opportunity to address this concern at the administrative level." Def. Br. at 26; *see e.g.*, *Zhaoqing Tifo New Fibre Co. v. United States*, 60 F. Supp. 3d 1328, 1351 (Ct. Int'l Trade 2015). In the *Final Determination*, Commerce acknowledged its obligations to section 782(i) of the Act. Final I&D Memo at 6 P.R. 341, Appx1067 ("{W}e were unable to conduct on-site verification of the information relied upon in making our final determination in this investigation, *pursuant to section 782(i) of the Act*."). As such, Commerce notified interested parties in the *Preliminary Determination* that it would comply with statutory verification requirements and then Commerce

acknowledged its non-conformity with such requirements in the *Final*

*Determination*.  Commerce's admitted non-compliance with section

782(i)(1) of the Act constitutes notice that Commerce was aware of its

issues related to the verification procedures in the administrative

proceeding.  There is no practical purpose served for Commerce to avoid

scrutiny in this instance.

### 2. Even If the Exhaustion Doctrine Applies, Exceptions of Futility and a Pure Question of Law Applies

Assuming *arguendo* that the doctrine of exhaustion applies,

exceptions to the exhaustion doctrine would apply.  The Federal Circuit

has reaffirmed that "the application of 'exhaustion principles in trade

cases is subject to the discretion of the judge of the Court of

International Trade.'" *See Agro Dutch Industries Limited v. United*

*States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007) (quoting *Corus Staal BV v.*

*United States*, 502 F.3d 1370, 1381 (Fed. Cir. 2007) and citing 28 U.S.C

§ 2637(d)).  Exhaustion does not apply where the question at issue is a

"pure question of law," *i.e.*, statutory construction alone is sufficient to

resolve the issue.  *See Agro*, 508 F.3d at 1029; *see also Consol. Bearings*

*Co. v. United States*, 166 F.Supp.2d 580, 587 (Ct. Int'l Trade 2001), *rev'd*

*on other grounds*, 348 F.3d 997 (Fed. Cir. 2003) .  Additionally, the

exhaustion requirement may be excused in instances where "pursuing

that route would clearly be futile, *i.e.*, where it is clear that additional

filings with the agency would be ineffectual." *Itochu*, 773 F.3d at 1145

(citing *Corus Staal*, 502 F.3d at 1378-79).  Only one exception is needed

to apply.  Defendant properly acknowledges such exceptions exist,

including futility, or the relevant matter is a "pure question of law."

Def. Br. at 26 (citing *Itochu*, 733 F.3d at 1145-48).  Here, the exceptions

of futility and pure questions of law apply.

    First, it would have been futile for Plaintiff to challenge

Commerce's verification procedures during the briefing stage of the

proceeding.  The Supreme Court has confirmed that "{i}t makes little

sense to require litigants to present claims to adjudicators who are

powerless to grant the relief requested.  Such a vain exercise will rarely

protect administrative agency authority or promote judicial efficiency."

*Carr v. Saul*, 141 S. Ct. 1352, 1361 (2021) (internal citations omitted).

In this instance, exhaustion would be "a useless formality."  *Yangzhou*

*Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1381 (Fed.

Cir. 2013).

As noted above, Commerce took five months after issuing its

*Preliminary Determination* to reverse its initial intent to conduct on-site

verification and, rather, issue a supplemental questionnaire.

Commerce's late-stage determination to forego verification occurred less

than two months prior to Commerce's statutory deadline to issue a final

determination by March 1, 2021.  *Preliminary Determination*, P.R. 235,

Appx1044-1046 (aligning the final determination with the final

determination in the parallel antidumping ("AD") investigation).  In

fact, Commerce's late-stage decision is highlighted by its establishment

of the final briefing schedule in this investigation *prior to* the deadline

for Teknik's ILVQ Response.  *See generally* ILVQ Response, C.R. 276-

293, P.R. 320-322, Appx2371-3288 (issued January 14, 2021 with an

initial deadline of January 21, 2021); *see also* Memorandum from Daniel

Alexander, International Trade Compliance Analyst, AD/CVD

Operations, Office VII, to The File, *Subject: Countervailing Duty*

*Investigation of Common Alloy Aluminum Sheet from the Republic of*

*Turkey: Extension of Deadline for Teknik Aluminyum Sanayi A.S. to*

*Respond to Questionnaire in Lieu of Verification* (Jan. 19, 2021)

("Extension of Teknik's ILVQ Response"), P.R. 319, Appx2370; *but see*

Memorandum from Daniel Alexander, International Trade Compliance Analyst, AD/CVD Operations, Office VII, *RE: Countervailing Duty Investigation of Common Alloy Aluminum Sheet from the Republic of Turkey: Briefing Schedule* (Jan. 15, 2021), P.R. 315, Appx2365.  Briefing concluded on February 9, 2021, less than three weeks prior to the issuance of the *Final Determination*.

Given the temporal limitations imposed by Commerce's own actions, it was impossible to (1) consider arguments in affirmative and rebuttal case briefs related to its deficient verification procedures, (2) establish a compliant verification methodology and communicate such a methodology to interested parties, (3) compile and issue a verification report detailing "the methods, procedures, and results" of the verification, (4) establish a briefing schedule to address its verification and subsequent report, and (5) prepare and issue a final determination based on the recently developed administrative record prior to March 1, 2021.  Even if Commerce only issued a post-briefing verification report, there would have been no meaningful opportunity for interested parties to comment and for Commerce to take into consideration the factual

and legal arguments for purposes of its final determination, which would require Commerce's internal review processes.

Second, the question before the Court is whether Commerce complied with its statutory mandate. A pure legal question does not require additional factual development or resort to agency expertise for the court to dispose of this purely legal question. *See Consol. Bearings Co. v. United States*, 348 F.3d 997, 1003–04 (Fed. Cir. 2003); *see also Consol. Bearings*, 166 F. Supp. 2d at 587 (detailing the "pure legal question" doctrine to require: (a) a new argument that is (b) purely legal and (c) does not require agency involvement or fact finding and (d) does not create undue delay) (internal citations omitted). The requirements related to conducting a verification and issuing a verification report are black letter law, specifically set forth in the SAA and Commerce's own regulations. Contrary to Defendant's assertions, the aspects related to verification, including the verification report setting forth "the methods, procedures, and results of a verification under this section prior to making a final determination in an investigation" pursuant to 19 C.F.R. § 351.307(c), are not discretionary.

### 3.  Commerce Did Not Comply With 19 C.F.R. § 351.307(c)

Defendant next alleges that Commerce reported the methods, procedures, and the results of the verification on the administrative record.  Def. Br. at 27.  At no point prior to the *Final Determination* did Commerce report its methodology or results of verification.  19 C.F.R. § 351.307(c).  The SAA unambiguously specifies that Commerce must "report the methods, procedures, and results of the verification prior to making its final determination in an investigation."  SAA at 868.  This verification report mandate was incorporated into Commerce's regulations.  *See* 19 C.F.R. § 351.307(c).  Defendant's argument is two-fold: (1) it is not required to issue a report under 19 C.F.R § 351.307(c) and (2) all parties were aware of the "methods, manner, and results of its verification" in this investigation.  Def. Br. at 27.  Such contentions are contradicted by unambiguous statute and the administrative record in this proceeding.

Defendant relies on Commerce's issuance of a verification questionnaire and Teknik's ILVQ Response to conclude that it adhered to 19 C.F.R. § 351.307(c).  Def. Br. at 27.  However, Commerce's regulation is clear: the Secretary is responsible for reporting "the

methods, procedures, *and* results" of the verification. Commerce did not report the results of the verification prior to the *Final Determination*. Prior to the *Final Determination*, Plaintiff was only aware that Commerce had obtained information through the ILVQ rather than an on-site verification. Plaintiff was unaware how this information was treated, what information was accepted for purposes of "verification," and what, if any, factual inaccuracies or misunderstandings on the part of Commerce resulted from the ILVQ procedures established in this investigation. At an absolute minimum, Commerce deprived Plaintiff of a full explanation of (1) the reasons it was unable to conduct a verification, (2) why Commerce believed the alternate procedures it undertook were satisfactory and meaningful, and (3) Commerce's findings and results based on its analysis of the information derived from Teknik's ILVQ Response. Because Commerce ignored a statutory mandate and its regulations, the *Final Determination* is not entitled to deference. This Court should remand the determination to Commerce so that it may verify the information submitted by Teknik, issue its results, and reach new findings where appropriate.

Commerce's ILVQ did not speak to "methods" and "procedures" for evaluating responses, nor could it possibly speak to "results." *See* SAA at 868. As for Teknik's ILVQ Response, the report must be issued by "Commerce," not Teknik. SAA at 868; *see also* 19 C.F.R. § 351.307(c).

## II.   Commerce's Application of Adverse Facts Available is Contrary to the Administrative Record and Contrary to Law

Teknik fully cooperated throughout the investigation, filing timely and complete questionnaire responses, and demonstrating through source documentation in its ILVQ Response how reported information tied to Teknik's books and records. Commerce's decision to apply AFA because Teknik provided an electronic download and PDF version of its period of investigation ("POI") ledger, rather than a screenshot version, renders Commerce's decision unsupported by substantial evidence and contrary to law as Commerce had source documents verifying that Teknik accurately reported information provided in questionnaire responses.

### A. Teknik Provided Source Documentation Verifying Questionnaire Responses

The administrative record demonstrates that Teknik provided source documentation enabling Commerce to verify questionnaire responses filed during the investigation. Defendant claims that AFA

was warranted and attempts to absolve Commerce from any responsibility to request clarification or, as is the case here, provision of documentation in a different format.  Def. Br. at 29-32.  Such arguments contravene both the verification process and Commerce's obligation to conduct fair and accurate CVD proceedings.  *See e.g., Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990).  Defendant incorrectly claims that Commerce had no obligation to notify Teknik of any alleged deficiencies, as requests for verification are not a "request for information" but rather a "collection of documentation needed to verify information that is ostensibly already on the record."  Def. Br. at 30.  While Defendant is correct that verification "entails 'verifying information' previously submitted by a respondent in its questionnaire answers," both Defendant and Defendant-Intervenor ignore the interactive and organic nature of the verification process.  Verification is not simply the collection of documents.  As the Court has explained, "verification is like an audit, the purpose of which is to test information provided by a party for accuracy and completeness." *Bomont Indus. v. United States*, 733 F. Supp. 1507, 1508 (Ct. Int'l Trade 1990).  Here, Commerce unreasonably

failed to allow Teknik to correct a minor deficiency - formatting - that would not result in a change in source information provided as part of the verification process.

The administrative record demonstrates that Teknik fully cooperated during the underlying investigation, including verification at which time Teknik provided source documentation and explanation on how information provided in questionnaire responses tied to the company's books and records.  Pl. Br. at 19.  In the ILVQ Response, Teknik provided an electronic download and PDF of Teknik's POI ledger.  *See* ILVQ Response, C.R. 276, 289, P.R. 322, Appx2478-2505. In an abuse of discretion, Commerce concluded that Teknik failed to cooperate with the investigation because the ledger was not provided in a screenshot format.  *See* Final I&D Memo at 8, P.R. 341, Appx1069.  At no time prior to Commerce's *Final Determination* did Commerce notify Teknik of any alleged deficiency or allow an opportunity to provide the submitted POI ledger in screenshot format.

Commerce's failure to notify or accept relevant source documentation must not be considered in a vacuum.  When evaluating whether Commerce unreasonably failed to notify Teknik of alleged

deficiencies, the Court should consider the specific facts of this verification.  Typically, Commerce conducts verification on-site, where Commerce audits a company's source documentation tying business records with information reported to Commerce in questionnaire responses.  During this interactive process, Commerce reviews documentation and requests further documentation and clarification on an as-needed-basis, which could include the format that information is presented at first instance.

Here, verification was conducted by questionnaire rather than on-site due to COVID-19.  *See* ILVQ, P.R. 314, Appx2361-2364.  Teknik provided its ledger for the POI to ensure that Commerce had sufficient documentation to demonstrate that information reported in questionnaire responses tied directly to Teknik's books and records. The POI ledger, provided both as an electronic download and PDF, was Teknik's actual ledger.  The POI ledger was not a document created to supplement or correct information that Teknik placed on the record in response to questionnaires and requests for information issued by Commerce in the investigation.  The fact that a physical download and PDF of the ledger was provided, rather than a screenshot, does not

impact the legitimacy or accuracy of documentation provided to Commerce.

It is well-established that AD and countervailing duty ("CVD") laws are remedial, not punitive in nature. *Guangdong Wireking Housewares & Hardware Co. v. United States*, 900 F. Supp. 2d 1362, 1370 (Ct. Int'l Trade 2013), *aff'd* 745 F.3d 1194 (Fed. Cir. 2014) (noting the remedial nature is "well established"). This Court has found the application of facts available unsupported by substantial evidence where the decision was based upon the form in which information was provided versus the substance. In *Pro-Team*, for example, Commerce issued a supplemental questionnaire requesting that Pro-Team revise previously submitted quantity and value ("Q&V") information submitted to Commerce. *Pro-Team Coil Nail Enterprise, Inc vs. United States*, 419 F.Supp.3d 1319, 1329 (Ct. Int'l Trade 2019). In Pro-Team's initial response to the supplemental questionnaire, Pro-Team inadvertently failed to provide revised Q&V figures. *Id.* Pro-Team provided the revised figures in a subsequent filing, noting that this information was already on the administrative record in its section C and D questionnaire responses. *Id.* Commerce applied AFA because

Q&V information was not provided in the form and manner requested and, as a result, Commerce concluded that the record lacked necessary information to determine the viability of the home market. *Id.* at 1330. The Court concluded that "Commerce's determination that the record lacked necessary information was unsupported by substantial evidence." *Id.* The same reasoning applies here. Teknik's actual ledger was provided in response to the ILVQ and, as a result, Commerce had necessary documentation to confirm that information reported in questionnaires tied to Teknik's books and records.

Defendant points to the deadlines for submitting factual information established in 19 C.F.R. § 351.301(c)(5), which sets deadlines to submit factual information 30 days before the scheduled date of the preliminary determination in an investigation or 14 days before verification. Def. Br. at 32. Defendant incorrectly claims that requiring Commerce to identify deficiencies would place an unnecessary burden and requirement on Commerce. *Id.* These arguments have no merit considering the interactive nature of a verification audit, which entails more than simply collecting verifying source documents.

Application of AFA, in situations such as that under consideration, where the actual POI ledger was provided, albeit in a different format than requested, is not supported by the administrative record. Claims of unfair burdens on Commerce are not persuasive or consistent with the facts and record of the underlying proceeding. Downloaded and PDF versions of the POI ledger have identical information as screenshots. Requesting a screenshot of this timely filed source documentation would not have impeded the investigation in any way as the information was identical and both documents were a snapshot of Teknik's accounting system.

Importantly, any impact on Commerce's schedule was self-imposed. In investigations, Commerce conducts verification after the preliminary determination is issued. Here, Commerce issued its preliminary decision memorandum on August 7, 2020. *See Decision Memorandum for the Preliminary Affirmative Determination in the Countervailing Duty Investigation of Common Alloy Aluminum Sheet from the Republic of Turkey* (Dep't of Commerce Aug. 7, 2020) ("Preliminary I&D Memo"), P.R. 229, Appx1014-1041. The verification

questionnaire was issued January 14, 2021, 160 days later.  *See* ILVQ, P.R. 314, Appx2361-2364.

Commerce must allow responding companies meaningful opportunities to engage in the verification process.  *See e.g., Nippon Steel*, 118 F.Supp.2d at 1381 n11 ("Commerce's verification procedures must allow meaningful participation by respondent.").  Where Commerce decides to conduct verification by questionnaire, it is incumbent on Commerce to identify deficiencies in a situation, such as under consideration here, where actual source documents were provided.  Commerce may not use verification as a "gotcha" excuse to apply AFA, ignoring the fact that a company fully cooperated and provided documentation to verify and support questionnaire responses throughout the investigation.  Commerce's failure to consider the administrative record as a whole and to allow Teknik to correct what Commerce considered a failure to provide "verifiable" information, despite having source documentation, was unreasonable and an abuse of discretion.  Had verification been on-site, Commerce would have simply requested that the ledger be provided in a different format.

27

Defendant claims that verification is not a "do over."  Def. Br. at 30.  Teknik agrees that verification is not a forum for respondents to submit new factual information to replace, correct, or supplement information for use in Commerce's CVD calculations.  Teknik does not request a "do over" to revise or correct information provided in questionnaire responses.  The POI ledger at issue was provided, upon request of Commerce, to demonstrate that data reported in questionnaires was correct and accurate.  The provision of requested information in PDF and electronic versions rather than screenshots does not justify the use of AFA.  Regardless of the format of the information, the substance is the same.  Commerce should have notified Teknik that it deemed the formatting of the document a deficiency and allowed Teknik to resubmit.

Case law cited by Defendant is not applicable as the cases involve situations where, during verification, respondents attempted to place information on the record to correct mistakes made when reporting information to Commerce in questionnaire responses.  In *Goodluck India*, questionnaires required Goodluck to create a control number ("CONNUM") for each product identified in its sales and cost databases

requiring Goodluck to "use the same CONNUM for any 'product with identical physical characteristics reported' across all submitted databases. *Goodluck India Limited v. United States,* 11 F.4th 1335, 1343 (Fed. Cir. 2021). A subsequent letter provided further guidance on how to report product characteristics. *Id.* During verification, Goodluck identified 682 misreported values resulted from misreported CONNUMs. *Id.* at 1339. Commerce refused to accept corrected worksheets and a data base filed with case briefs on the basis that the newly provided information was untimely. *Id.* at 1340. Commerce concluded that Goodluck's error rendered the dumping calculation inaccurate as "the control number is fundamental to Commerce's calculation, as it controls the allocation of costs and determines the product matches between U.S. and home markets." *Id.* Commerce found that "Goodluck 'failed to cooperate by acting to the best of its ability to comply with Commerce's requests for information' because 'the scope of the errors and omissions identified at verification. . . {we}re the result of both inattentiveness and carelessness.'" *Id.* at 1341.

Here, Teknik did not attempt to provide or correct information provided in questionnaires or databases. Information reported during

the investigation was correct and accurate, directly linking to Teknik's corporate books and records.  In its ILVQ Response, Teknik provided a download of its entire ledger, and provided a PDF and electronic version to Commerce to enable Commerce to verify submitted information and data.  Unlike the facts in *Goodluck India*, Commerce had necessary information to calculate CVD margins and to verify submitted information.

Similarly, in *Hung Vuong*, Commerce learned at verification that a mandatory respondent had discarded certain source documents kept in the normal course of business.  *Hung Vuong Corporation v. United States*, 483 F. Supp. 3d 1321, 1346 (Ct. Int'l Trade 2020).  Commerce noted that Hung Voung was an experienced respondent with experienced counsel, and as a result should be expected to maintain essential records and able to meet Commerce's reporting requirements. *Id.*  Commerce noted that failure to keep these documents was inconsistent with other documents maintained by respondent.  *Id.* at 1347.  There are no allegations in this proceeding that Teknik destroyed or failed to maintain essential documentation.

In sum, Commerce's application of AFA based upon alleged deficiencies in Teknik's ILVQ Response is unsupported by substantial evidence and contrary to law.

## B. Commerce Improperly Applied AFA

Defendant's claim that AFA was appropriate because Teknik failed to comply with Commerce's verification efforts is unsupported by substantial evidence.  Def. Br. at 32, 33.  The administrative record demonstrates that Teknik provided accurate source documentation, including Teknik's POI ledger, fully enabling Commerce to verify that information submitted in questionnaire responses was consistent with Teknik's business records.  Teknik's ILVQ Response responded to Commerce's questions, demonstrating how reported information linked to Teknik's official business documents and records.  Commerce's issue and decision memorandum found no errors in data or information provided in response to questionnaires issued by Commerce.  Yet, Commerce inappropriately applied AFA because Teknik provided its POI ledger as a download and PDF rather than screenshots.  We refer the Court to Section IV of Plaintiff's 56.2 Memorandum for a detailed explanation regarding how Teknik's ILVQ Response tied information

reported in Teknik's questionnaire responses to Teknik's business records. For reasons detailed therein, Commerce had source data and documentation needed to verify information provided during the investigation.

The facts under consideration differ from case law cited by Defendant. In *Tianjin Mach.*, Commerce applied AFA to certain factors of production based upon information learned at verification. *Tianjin Machinery Import & Export Corp. v. United States,* 353 F. Supp 2d 1294 (Ct. Int'l Trade 2004). For example, Commerce learned that the factory had closed ten months prior to verification and there were no packing materials that could be weighed. *Id.* at 1298. Nor were there records documenting the weight of packing materials. *Id.* at 1299. In addition, Commerce found that labor rates reported by the respondent were not correct, noting that Commerce was not able to recreate or explain the method by which Huarong arrived at its verification figures. *Id* at 1303.

Similarly, in *Acciai Speciali*, Commerce applied AFA after finding that respondent had pervasive errors in its database. *Acciai Speciali Terni S.P.A. v. United States*, 142 F Supp. 2d 969, 973 (Ct. Int'l Trade 2001). In *Acciai Speciali,* the respondent refused to provide affiliate

information indicating that it should not be required to provide this information and noting that it was unable to compel resellers where the company had only a minor interest in providing. *Id.* Moreover, at verification, Commerce found discrepancies between the submitted database and the records of respondent. *Id.* at 974.

As support for its application of AFA here, Defendant points to a statement in Teknik's rebuttal brief indicating that screenshots were not provided as the relevant ledger was too big. Def. Br. at 34. Teknik's statement must be taken in the context that it was provided. Teknik indicated that it provided the entire account ledger for [            ] at Exhibit 14 which documented the transactions during the POI. *See Teknik Aluminyum Sanayi A.S.'s Rebuttal Case Brief* (Feb. 9, 2021) ("Teknik Rebuttal Brief") at 11, C.R. 310, P.R. 331, Appx4920. The full ledger was provided to ensure that Commerce had all necessary information, rather than mere snippets. As verification was not on-site, Teknik erred on providing too much information rather than not enough. Importantly, one of the issues under consideration was non-use of certain programs. The POI ledger was the best source to document this issue as the ledger included the POI transactions. The

information provided was Teknik's actual ledger in downloaded form.
This meant that Commerce had sufficient information to contextualize
and validate information reported in questionnaire responses. Teknik
has no reason to believe that Commerce would question the validity of
information provided as the ledger was not an ancillary document as
incorrectly claimed by Defendant Intervenor. Def.-Int. Br. at 23.
Defendant and Defendant-Intervenor's continued insistence of treating
the downloaded ledger as a secondary source document demonstrates
the Defendant's continued misunderstanding of the underlying
administrative record.

Defendant-Intervenor's description of the verification process and
differences between on-site verification versus verification by
questionnaire is misleading. Def.-Int. Br. at 9-10. Incredulously,
Defendant-Intervenor states that the burden on Teknik in the
investigation under consideration was significantly less than if an on-
site verification was conducted, claiming that Teknik was spared time,
expenses, and resources necessary to facilitate an on-site verification.
*Id.* at 10. Showing a complete disregard of the interactive nature of

verification, Defendant-Intervenor incorrectly claims that all Teknik had to do was to provide "screenshots" of relevant source data. *Id.*

In reality, verification by questionnaire presents significant hurdles and burdens compared to typical on-site verification.  For on-site verification, counsel typically spends a week or more working with a responding company to gather necessary source documentation and prepare detailed explanations demonstrating how business records tie to questionnaire responses following Commerce's issuance of a verification agenda.  *See e.g., Universal Polybag Co. v. United States*, 577 F. Supp. 2d 1284, 1294 (Ct. Int'l Trade 2008) (describing typical Commerce verification agenda).  During verification, if Commerce feels that information provided is not sufficient, Commerce simply requests additional information or information in a different format.  The issue faced here, a downloaded version of a ledger versus a screenshot of the same ledger, during an on-site verification would not be an issue or reason to justify the use of AFA as Commerce would discuss this issue with the respondent and further information would be provided to ensure participation in a meaningful way.

Verification by questionnaire is burdensome at best.  Commerce

allowed Teknik only 8 days to prepare its verification response.  ILVQ

Response, C.R. 276-293, P.R. 320-322, Appx2371-3288 (issued January

14, 2021 with an initial deadline of January 21, 2021); *see also*

Extension of Teknik's ILVQ Response (extending Teknik's ILVQ by one-

day until January 22, 2021), P.R. 319, Appx2370.  Because of the

COVID-19 Pandemic, internal coordination to gather information, as

well as translation of documents and coordination with counsel, was

difficult due to the remote work environment and differences in time

zones.  *See* Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of

Commerce, *Re: Common Alloy Aluminum Sheet from Turkey: Extension*

*Request for Response to Questionnaire in Lieu of Verification* (Jan. 19,

2021), P.R. 318, Appx2366-2369.  Teknik not only needed to prepare its

response to the ILVQ, but also needed to provide translated documents

necessitating coordination with a third party.  Teknik also needed to

prepare public versions of its response which included bracketing and

redacting of all business proprietary information.  As Teknik's

submission was 913 pages of information and documentation, this took

significant time.  Because Commerce recognizes the significant burdens

placed on companies in preparing questionnaire responses, significantly longer time is typically provided. For example, Teknik had 22 days to provide information identifying affiliated companies and 54 days to prepare the remaining portions of Commerce's initial questionnaire. *See* Memorandum from Gene H. Calvert, International Trade Compliance Analyst, AD/CVD Operations, Office VI, Enforcement and Compliance, to The File, *Subject: Countervailing Duty (CVD) Investigation on Common Alloy Aluminum Sheet from the Republic of Turkey: Extension of Deadline to Respond to Section III (Affiliated Parties) of CVD Questionnaire* (May, 6, 2020), P.R., 62, Appx1129 (extending deadline for Section III identifying affiliated companies until May 14, 2020 such that the deadline was 22 days); Memorandum from Gene H. Calvert, International Trade Compliance Analyst, AD/CVD Operations, Office VI, Enforcement and Compliance, to The File, *Subject Countervailing Duty (CVD) Investigation on Common Alloy Aluminum Sheet from the Republic of Turkey: Second Extension of Deadline to Respond to Section III of CVD Questionnaire* (June 4, 2020), P.R., 98, Appx1130 (extending deadline for remaining Section of Section III until  June 15, 2020 such that deadline was 54 days).

## C. Commerce's Decision to Reject Teknik's Sales Reconciliation Was Unsupported by Substantial Evidence and Contrary to Law

Defendant-Intervenor tries to poke holes in Teknik's domestic sales reconciliation claiming that Teknik admitted that amounts in Teknik's reconciliation were not accounted for in Teknik's financial system and for that reason no screenshots were provided. Def.-Int. Br. at 25. Defendant-Intervenor's explanation, however, glosses over important parts of the administrative record. Teknik provided a screenshot from its accounting system demonstrating the domestic sales as per the accounting system at Exhibit V-4. ILVQ Response, C.R. 276, 281, P.R. 321, Appx2397-2401. Teknik did not provide screenshots for the other values in the reconciliation in Exhibit V-4 because they were not accounted for in the financial system. Teknik Rebuttal Brief at 6, C.R. 310, P.R. 331, Appx4915. The other adjustments were made by the auditor to prepare the audited financial statements. Adjustment for "Sale to TMT" was necessary because sales to TMT were considered domestic sales for accounting purposes and as overseas (*i.e.*, export) sales for purposes of preparing the consolidated audited financial statements. *Id*.

Finally, while Defendant and Defendant-Intervenor argue that Commerce may reach different decisions on the same facts and business records, for the same period of time, such arguments fly in the face of logic and common sense.  While AD and CVD proceedings differ, the reconciliation of sales to a company's books and records does not.

## CONCLUSION

For the reasons set forth in its briefing, Plaintiff respectfully requests that this Court hold that Commerce's *Final Determination* was not supported by substantial evidence and otherwise not in accordance with law.  Plaintiff respectfully requests this Court to remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision.

Respectfully Submitted,

By:/s/ Kristen Smith
    Kristen Smith
    Sarah E. Yuskaitis

**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247


*Counsel to Teknik Aluminyum*
*Sanayi A.S.*

Dated: March 25, 2022

Court No. 21-00251

## <u>Certificate of Compliance with Chamber Procedure 2(B)(1)</u>

The undersigned hereby certifies that the foregoing brief contains 6,987 words, inclusive of footnotes, exclusive of the table of contents, table of authorities, glossary, and certificates of counsel, and counsel's signature block, and therefore complies with the maximum 7,000-word count limitation set forth in the Standard Chamber Procedures of the U.S. Court of International Trade, as modified by the joint scheduling order in this case.

By:   <u>/s/ Sarah E. Yuskaitis</u>
Sarah E. Yuskaitis
Sandler, Travis & Rosenberg, P.A.
1300 Pennsylvania Ave., N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4967

*Counsel to Teknik Aluminyum Sanayi A.S.*

Dated: March 25, 2022