**Slip Op. 23-33**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

**Court No. 21-00251**

TEKNIK ALUMINYUM SANAYI A.S.,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

ALUMINUM ASSOCIATION COMMON ALLOY
ALUMINUM SHEET TRADE ENFORCEMENT
WORKING GROUP AND ITS
INDIVIDUAL MEMBERS,

*Defendant-Intervenors.*

Before: M. Miller Baker, Judge

## OPINION

[The court denies Plaintiff's motion for judgment on the agency record and instead grants judgment on the agency record to Defendant and Defendant-Intervenors.]

Dated: March 16, 2023

*Kristen Smith*, Sandler, Travis & Rosenberg, PA, of Washington, DC, argued for Plaintiff. With her on the briefs was *Sarah E. Yuskaitis*.

*Kyle S. Beckrich*, Trial Attorney, Civil Division/National Courts, U.S. Department of Justice of Washington, DC, argued for Defendant. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the briefs was *Brendan Saslow*, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce of Washington, DC.

*Elizabeth C. Johnson*, Kelley Drye & Warren LLP of Washington, DC, argued for Defendant-Intervenors. With her on the brief were *John M. Herrmann* and *Kathleen W. Cannon*.

*Baker*, Judge: Plaintiff Teknik Aluminyum Sanayi A.S. challenges the Department of Commerce's final determination in a countervailing duty investigation of aluminum sheet from Turkey. For the reasons below, the court sustains that determination.

## I

The Tariff Act of 1930, as amended, provides that when Commerce determines that a foreign government provides "countervailable subsid[ies]" of goods imported into the United States, and the International Trade Commission also determines that such imports injure domestic industry, the Department will impose a "countervailing duty" on the relevant merchandise

"equal to the amount of the net countervailable subsidy." 19 U.S.C. § 1671(a).[1]

In countervailing duty investigations, Commerce first obtains relevant information from interested parties and other sources through questionnaires. *See* 19 C.F.R. § 351.301(c)(1) ("During a proceeding, the Secretary may issue to any person questionnaires, which includes both initial and supplemental questionnaires."). Based on that information, the Department issues a preliminary determination. *Id.* § 351.205. Commerce then verifies information gathered in its investigation before issuing a final determination. *See* 19 U.S.C. § 1677m(i)(1) (requiring the Department to "verify all information relied upon in making . . . a final determination").

"Verification is like an audit, the purpose of which is to test information provided by a party for accuracy and completeness." *Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321, 1336 (CIT 2020) (quoting *Bomont Indus. v. United States*, 733 F. Supp. 1507,

---

[1] "Generally, countervailing duty investigations are undertaken by Commerce to determine whether a foreign government has conferred to its producers benefits that are deemed to be countervailable subsidies. A countervailable subsidy is defined to include certain types of financial assistance provided by a foreign government or entity that confers a 'benefit' to the recipient relating to its production, manufacture, or export of the subject goods." *Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.Ş. v. United States*, 992 F.3d 1348, 1352 (Fed. Cir. 2021) (citing 19 U.S.C. §§ 1671, 1677).

1508 (CIT 1990)). The Department "has latitude in how it conducts verification . . . ." *Id.* at 1336 n.10.

Commerce's regulations provide that ordinarily it will conduct on-site verification where the respondent maintains its records. *See* 19 C.F.R. § 351.307(d). During the COVID-19 pandemic, however, the Department "issued an agency-wide memo prohibiting all travel not 'mission-critical and pre-approved by senior bureau leadership.' " *Ellwood City Forge Co. v. United States*, 582 F. Supp. 3d 1259, 1266 (CIT 2022) (quoting Dep't of Commerce, *All Hands: Coronavirus Update* (Mar. 16, 2020), https://bit.ly/commercecoronavirus). Commerce therefore used "verification questionnaires" instead of on-site verification. *See Coal. of Am. Millwork Producers v. United States*, 581 F. Supp. 3d 1295, 1302 (CIT 2022); *Ellwood City*, 582 F. Supp. 3d at 1267–69 (discussing use of verification questionnaires "in lieu of performing an on-site verification").

## II

In March 2020, American aluminum sheet producers petitioned Commerce to investigate alleged subsidization of Turkish aluminum sheet producers by that country's government, contending that such subsidies harmed U.S. domestic industry. *See Common Alloy Aluminum Sheet from Bahrain, Brazil, India, and the Republic of Turkey: Initiation of Countervailing Duty Investigations*, 85 Fed. Reg. 19,449, 19,550 (Dep't Commerce Apr. 7, 2020) (referring to receipt of petitions in March 2020). Commerce opened an investigation in response. *Id.* at 19,452.

In its investigation, the Department selected Teknik as one of two mandatory respondents. Appx1006–1012. Based on the results of its investigation, the Department preliminarily determined that Teknik received *de minimis* subsidies from the Turkish government. Appx1044–1046; *see also* 19 C.F.R. § 351.106(c)(1) (providing that Commerce treats any countervailable subsidy rate of less than 0.50 percent as *de minimis*). The *de minimis* finding meant that Teknik would escape imposition of countervailing duties absent any further changes in Commerce's final determination. *See* 19 U.S.C. § 1671b(b)(4)(A) (directing Commerce to "disregard any *de minimis* countervailable subsidy" in making a preliminary determination); *id.* § 1671d(a)(3) (same as to the Department's final determination); As relevant here, Commerce then propounded a verification questionnaire, Appx2361–2364, to which Teknik responded. Appx2371–3288.

In its final determination, Commerce assigned Teknik a countervailing duty rate of 4.34 percent based on application of partial facts otherwise available with an adverse inference.[2] ECF 21-4, at 46. The Department explained that it asked Teknik to submit sales reconciliations tied to "source documentation such as audited financial statements and/or financial accounting system screenshots" and that it also requested "screenshots of ledgers and trial balance information from the actual financial accounting systems

---

[2] For a detailed explanation of facts otherwise available with an adverse inference, *see Hung Vuong*, 483 F. Supp. 3d at 1336–39.

that support the sales reconciliations and reports of non-use." *Id.* at 21. Commerce found the screenshots important because they "would allow us to confirm whether the reconciliations corroborated entries in Teknik's financial systems or financial statements." *Id.* at 22. Teknik failed to submit screenshots, however, and the Department concluded that "many of the values in the submitted reconciliations do not tie directly to source documentation." *Id.*

As a result, Commerce determined under § 1677e(a)(2)(D) that Teknik had provided information that could not be verified and further found under § 1677e(a)(2)(A) and (B) that Teknik had "withheld information that Commerce requested and failed to provide information in the form and manner requested by Commerce." *Id.* The Department then explained that "because Teknik specifically acknowledged that it could have provided screenshots from its accounting system and did not," the company had failed to cooperate to the best of its ability under § 1677e(b). *Id.* at 22–23.

### III

Teknik timely challenged Commerce's final determination under 19 U.S.C. § 1516a(a)(2)(B)(i). ECF 1. Members of the domestic industry intervened as of right to defend the Department's decision. ECF 18. Teknik then filed the pending Rule 56.2 motion for judgment on the agency record (ECF 37, confidential; ECF 38, public). The government (ECF 35, confidential; ECF 36, public) and the domestic industry (ECF 33, confidential; ECF 34, public) opposed the motion

and Teknik replied (ECF 39, confidential; ECF 40, public); the court then heard oral argument.

## IV

The court has subject-matter jurisdiction under 28 U.S.C. § 1581(c).

In § 1516a(a)(2) actions such as this, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). That is, the question is not whether the court would have reached the same decision on the same record—rather, it is whether the administrative record, taken as a whole, permits Commerce's conclusion.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up).

In addition, Commerce's exercise of discretion in § 1516a(a)(2) cases is subject to the default standard of the Administrative Procedure Act, which authorizes a reviewing court to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Solar World Americas, Inc. v. United States*, 962 F.3d 1351, 1359 n.2 (Fed. Cir. 2020) (explaining that in cases reviewed under 28 U.S.C. § 2640(b), "section 706 review applies since no law provides otherwise").

V

Teknik challenges the 4.34 percent countervailing duty rate assigned by Commerce based on two overarching theories. First, for various reasons, Teknik objects to *how* Commerce conducted verification. Second, even if the Department otherwise properly performed verification, the company contends that Commerce unlawfully applied partial facts otherwise available with an adverse inference.

A

1

Teknik argues that it was "unreasonable" or "arbitrary and capricious" for Commerce to use a questionnaire instead of on-site verification because "[v]erification in [countervailing duty] investigations is, by its nature, an interactive exercise. During the verification process, respondent companies provide supporting documentation to Commerce and can supplement said documentation should Commerce feel that the information provided is not sufficient." ECF 38-1, at 21. Teknik contends that because no such "interactive exercise" happened here, the Department erred: "Failure to allow respondent companies to provide clarifying information or further information where Commerce

deems supporting information is deficient is contrary to Commerce's mandate to ensure fair and accurate CVD determinations." *Id.* at 22.

Teknik, however, cites no authority requiring Commerce to employ any verification procedure under the circumstances of a global pandemic, much less any authority for the proposition that verification must be an "interactive exercise" in which respondents can supplement their information upon request. As the government notes, the Federal Circuit has held that Commerce has the authority "to derive verification procedures ad hoc," ECF 36, at 17 (quoting *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1343 (Fed. Cir. 2021)), and that the statute gives the Department "wide latitude in its verification procedures," *id.* at 18 (quoting *Stupp Corp. v. United States*, 5 F.4th 1341, 1350 (Fed. Cir. 2021)). The court easily rejects Teknik's challenge to Commerce's decision to conduct verification by questionnaire rather than on site.

2

Teknik contends that "Commerce's failure to issue a verification report was contrary to law . . . ." ECF 38-1, at 28. In support of this theory, the company cites the following Commerce regulation:

(c) *Verification report.* The Secretary will report the methods, procedures, and results of a verification under this section prior to making a final determination in an investigation or issuing final results in a review.

19 C.F.R. § 351.307(c). Teknik asserts that the Department's violation of the regulation prevented the company "from commenting on [Commerce's] incorrect understanding of" the lack of requested screenshots in the company's verification response—had Teknik "known about Commerce's misunderstanding," it could have "pointed to the record documents provided in" its verification response, ECF 38-1, at 29.

Even accepting Teknik's reading of the regulation, it had every opportunity to defend its failure to submit screenshots to the Department. Defendant-Intervenors raised that issue in their case brief shortly after the company submitted its verification questionnaire. Appx4832–4840. Teknik duly responded when it filed its rebuttal brief. Appx4915. In its final determination, Commerce considered, and rejected, the company's explanation.

Because Teknik has not shown that it suffered substantial prejudice, any procedural error by Commerce in not issuing a verification report was harmless. *See United States v. Great Am. Ins. Co. of N.Y.*, 738 F.3d 1320, 1330 (Fed. Cir. 2013) (an agency's "procedural error" is not actionable under the APA unless it causes "substantial prejudice"); *cf. Ellwood City*, 582 F. Supp. 3d at 1280 n.3 (same, citing *Great American* and other authorities).[3]

---

[3] As Teknik has not shown substantial prejudice, the court need not address the government's argument that the company failed to exhaust its administrative remedies nor Teknik's rejoinder that exhaustion does not apply to purely legal questions.

3

Teknik further argues that it had a right to cure any deficiency created by its failure to supply the requested screenshots at verification. The company invokes 19 U.S.C. § 1677m(d), which provides that when Commerce "determines that a response to a request for information" does not comply with the request, the agency is to give notice and, "*to the extent practicable*," an opportunity to cure the deficiency "in light of the time limits" applicable for completing the investigation. *See* ECF 38-1, at 26–27 (emphasis added) (quoting 19 U.S.C. § 1677m(d)).

In its opening brief, Teknik makes no argument that it would have been practicable for the Department to provide the company an opportunity to cure the deficiency in view of the applicable time limits, which is reason alone to reject its § 1677m(d) argument. For its part, the government contends that it was not practicable to provide Teknik with such an opportunity here, ECF 36, at 31–32, and the court agrees.

Teknik submitted its verification questionnaire on January 22, 2021. Appx2371. Case briefs were due on February 2, 2021, *see* Appx4821, rebuttal briefs were due on February 9, 2021, *see* ECF 40, at 16, and Commerce's statutory deadline to issue a final determination was March 1, 2021, *id*. at 15. Under this tight timetable, the Department simply did not have time to allow Teknik an opportunity to correct the deficiency. Indeed, Teknik explains at length that this schedule made it pointless for the company to object in its

rebuttal brief to the Department's failure to issue a verification report. *See* ECF 40, at 16–17. For the same reasons why it was impracticable for Teknik to object to Commerce's failure to issue such a report, it was impracticable for the Department to allow the company to remedy the verification deficiency.

B

Teknik also challenges Commerce's application of facts otherwise available with an adverse inference. The Department applied facts otherwise available because Teknik "withheld information, failed to provide requested necessary information in the form and manner requested by Commerce, or failed to provide verifiable information" under 19 U.S.C. § 1677e(a)(2)(A), (B), and (D). ECF 21-4, at 6. Because the statute is structured disjunctively, if the court sustains Commerce's decision as to any one of these grounds, the court need not address the other provisions. *See Hung Vuong*, 483 F. Supp. 3d at 1337 ("[I]f any one (or more) of the conditions listed in paragraph (2) applies, Commerce must use facts otherwise available.").

The Department explained that its verification questionnaire asked Teknik "to provide a reconciliation to its total and export sales as reported in its June 15, 2020[,] questionnaire response and its 2019 accounting records and year-end financial statement" and further asked the company "to provide screenshots to support all reported amounts used in the reconciliation." ECF 21-4, at 6. Commerce also explained that other parts of the verification questionnaire likewise sought screenshots from Teknik's accounting

system. *Id.* at 7. The Department explained that "screenshots from [the company's] accounting systems . . . would allow us to confirm whether the reconciliations corroborated entries in Teknik's financial systems or financial statements," *id.* at 22, and would have allowed Commerce "to see the actual information as portrayed in Teknik's financial accounts and ledgers," *id.* In other words, Commerce wanted the company to provide source documentation to substantiate the amounts reported in the questionnaire responses.

The Department found, however, that Teknik's response to the verification questionnaire did not include the screenshots Commerce had requested and that the company had instead produced data in an alternative format that did not comply with instructions. *Id.* at 6. Teknik does not dispute this point—rather, it repeatedly argues that it decided that screenshots would not be helpful and instead gave Commerce its complete accounting ledgers in a different format. ECF 38-1, at 45 ("Providing multiple screenshots of a big ledger would not have presented the information in any meaningful sense. In other words, Teknik provided more verifiable information than that which Commerce requested to support the lack of payment for deduction of taxable income."), 46 ("Teknik also submitted the complete POI account ledger in excel [sic] format *instead of screenshot* [sic] from the accounting system. . . . As Teknik explained to Commerce, Teknik submitted the complete ledger in excel [sic] format over screenshot because Teknik wanted to submit the complete ledger showing all the transactions for the POI as opposed to a screenshot which would have only provided Commerce with the POI total.") (emphasis added), 50

("Teknik emphasized the content of the information over the format . . . ."). Teknik complains that Commerce could have asked for screenshots if it was not satisfied with what the company submitted, *id.* at 47, but that argument ignores that it was *Teknik's* obligation to submit what the Department requested, especially at verification.[4]

Teknik argues, however, that "[t]he screenshots are not needed to determine usage as Commerce was provided the entire actual account ledger to show the lack of payment for this program. Commerce failed to provide any information or analysis as to whether in fact the lack of screenshots created a gap in the record that required the application of AFA." ECF 38-1, at 52. But Commerce did not have to do that. The statute requires use of facts otherwise available when a party fails to provide information "in the form and manner requested," 19 U.S.C. § 1677e(a)(2)(B), and it permits an adverse inference when a party fails to cooperate to

---

[4] *See also* 19 U.S.C. § 1677m(c)(1) (permitting a party to ask Commerce to modify its reporting requirements if the party notifies the Department in advance, explains the problem, and suggests an alternative); *Hung Vuong*, 483 F. Supp. 3d at 1361 (noting that Hung Vuong failed to seek advance approval from Commerce for its alternative data format and finding that "Hung Vuong should have made that request of Commerce before unilaterally proceeding with its own alternative methodology"). The same is true here. Teknik sought, and received, a one-week extension of time to respond to the verification questionnaire, *see* Appx2370, so there is no reason to believe that Commerce would not at least have considered Teknik's request for permission to use a different format.

the best of its ability, *id*. § 1677e(b)(1). Teknik did not provide information in the form and manner requested, and its ready admission that it did not do so demonstrates failure to cooperate. That is enough to sustain Commerce's findings.[5]

\*   \*   \*

For all these reasons, the court denies Teknik's motion for judgment on the agency record and instead grants judgment on the agency record to the government and to Defendant-Intervenors. *See* USCIT R. 56.2(b). A separate judgment will issue. *See* USCIT R. 58(a).

| | |
|---|---|
| Dated:  March 16, 2023 | /s/ *M. Miller Baker* |
| New York, New York | Judge |

---

[5] Alternatively, the court would sustain Commerce's use of facts otherwise available based on the other grounds cited by the Department. *See* 19 U.S.C. § 1677e(a)(2)(A) ("withholds information that has been requested by the administering authority"); *id*. § 1677e(a)(2)(D) ("provides such information but the information cannot be verified"). As to the former, Teknik admits that it withheld information requested by Commerce. As to the latter, Teknik's "account ledger" is an Excel spreadsheet. Counsel for the intervenors noted at oral argument that a spreadsheet in an Excel file can be modified, so Commerce rightly does not accept that format instead of "screenshots of the relevant accounts." Appx2363 (verification questionnaire).